227 A.2d 187.

ANNETTE DONAHUE *vs.* ASSOCIATED INDEMNITY CORPORATION.

LAURENCE J. DONAHUE, JR. *vs.* ASSOCIATED INDEMNITY CORPORATION.

MARCH 15, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. These actions which have been consolidated for hearing are before us on the appeal of the respective plaintiffs from a decision of the superior court granting the defendant's motion for summary judgment in each case.

The plaintiffs Laurence J. Donahue, Jr., and his wife brought suit on the uninsured motorist clause of his insurance policy to recover for injuries suffered by Mrs. Donahue in an automobile collision with an uninsured motorist, Richard A. Gabriel. The defendant's motions were based

upon certain provisions of the policy which prohibit any action thereon by plaintiffs until they submit both the question of liability and damages to arbitration.

The "uninsured motorist clause" is a comparatively new type of insurance coverage having been developed since 1954 to serve a need for protection of the policyholder against damages suffered in a collision with a motorist who has no insurance. It is now available in most of the fifty states. Several of the states have enacted uninsured motorists legislation making this type of coverage mandatory.[1] In Rhode Island under the provision of §27-7-2.1, as amended, such protection is offered but it may be rejected by the insured.

One provision of this policy under the heading "Insuring Agreements" is:

> "I. Damages for Bodily Injury Caused by Uninsured Automobiles.
>
> "To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury, sickness or disease, including death resulting therefrom, hereinafter called 'bodily injury,' sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; provided, for the purposes of this endorsement, determination as to whether the insured or such representative *is legally entitled to recover such damages, and if so the amount thereof,* shall be made by agreement between the insured or such representative and the Company or, if they fail to agree, by arbitration." (italics ours)

Included among the numerous paragraphs of the policy is a provision for arbitration under the heading "Conditions" which reads:

---

[1]Donaldson, Uninsured Motorist Coverage, 34 Ins. Counsel J. 57 (Jan. 1967)

"6. Arbitration. If any person making claim hereunder and the Company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured automobile because of *bodily injury* to the insured, *or do not agree as to the amount of payment which may be owing under this endorsement,* then, upon written demand of either, the matter or matters upon which such person and the Company do not agree shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and the Company each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this endorsement." (italics ours)

While plaintiffs have alleged several grounds upon which they allege error by the superior court in granting defendant's motions for summary judgment, we need consider just one. This is their contention that defendant insurer in preparing this policy has failed to comply with the provisions of G. L. 1956, §10-3-2, and therefore they are not required to proceed to arbitration. We believe plaintiffs' position in this regard is well taken. This section reads as follows:

"Agreements to arbitrate subject to chapter.—*When clearly written and expressed and contained in a separate paragraph placed immediately before the testimonium clause or the signatures of the parties,* a provision in a written contract to settle by arbitration a controversy *thereafter* arising out of such contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract; provided, however, that the provisions of this chapter shall not apply to collective contracts between employers and employees, or

between employers and associations of employees, in respect to terms or conditions of employment." (italics ours)

Chapter 3 of title 10 is known as The Rhode Island Arbitration Act. It was first enacted into law on April 25, 1929 and was then known and cited as P. L. 1929, chap. 1408. This act has remained unchanged throughout the years. The only change of record is shown in sec. 2, chap. 659, of P. L. 1939 which restored certain words inadvertently omitted from the Arbitration Act as a result of the compilation of the General Laws in 1938.

Prior to this time, this court in 1901 in *Pepin* v. *Societe St. Jean Baptiste*, 23 R. I. 81, enunciated what was and is the common-law rule relative to the recognition of a clause calling for binding arbitration of future disputes which deprive a person of his remedy or recourse at law. We stated that such a provision is against public policy, has no binding force and will not be recognized. We, in effect, held that the courthouse doors would not be barred so as to prevent a person from litigating a future controversy of which he had no knowledge at the time of the original agreement.

The insuring agreement before us provides for the disposition of claims with respect to the issues of liability and damages by arbitration. It is clear from the language of the policy that this provision constitutes an agreement to submit to arbitration disputes which may arise in the future on these two issues and is, in our opinion, within the common law prohibition.

The provision in the instant policy differs considerably from one calling for an appraisal in the case of a disagreement as to the amount of loss which is usually found in a fire insurance policy. Compliance with such terms is a condition precedent before a suit to recover on such a policy can be commenced. We have in the past recognized such

a stipulation.[2] Here, however, the arbitration provision is a final and conclusive adjudication between the parties both as to liability and damages and falls four square within the rule of *Pepin, supra*. See also *Childs* v. *Allstate Ins. Co.*, 237 S. C. 455.

As part of our study of these causes we have examined the original piece of legislation which is now chap. 3 of title 10. It is on file in the official archives of the state of Rhode Island in the secretary of state's office. The bill was introduced in the house of representatives on January 29, 1929 and was designated as House Bill 623[3] and referred to the committee on judiciary of that body. On April 17, 1929 the committee recommended the indefinite postponement of House Bill 623 and the passage of a substitute bill marked House Bill 623 substitute "A." The substitute bill was passed by both branches of the general assembly and approved by the governor.

We have compared the original bill as introduced in the general assembly with the substitute bill as enacted into law and find that the only difference between them is the appearance in the substitute bill of the language which states that a provision in a written contract calling for the settlement of a future controversy by arbitration shall be enforceable "When clearly written and expressed and contained in a separate paragraph placed immediately before the testimonium clause or signature of the parties. * * *"

---

[2]See *Grady* v. *Home Fire and Marine Ins. Co.*, 27 R. I. 435, *Gregory* v. *Pawtucket Mutual Fire Ins. Co.*, 58 R. I. 434, and *Blackstone Valley Gas & Electric Co.* v. *Rhode Island Power Transmission Co.*, 64 R. I. 204.

[3]A marginal note found in the bound volume of the Public Laws of 1929 identifies chap. 1408 as House Bill 635 substitute A. This is a typographical error. Legislative records of the house of representatives for the 1929 session show that House Bill 635 which purported to modify the operation and functions of the parole board was introduced on January 31, 1929 and referred to the committee on judiciary. When the legislature adjourned "sine die" in 1929, this bill remained in committee. It did not pass.

The addition of this qualifying language to the original House Bill 623 by the general assembly represents a significant gesture by the legislature which this court cannot ignore. From our review of the legislation of the several states which have modified the common law and now allow arbitration, we have determined that this particular provision is unique to The Rhode Island Arbitration Act and is found nowhere else.

We believe that the legislature in promulgating this condition reflected the concern of this court as to the adoption of binding arbitration of future disputes and consequently felt that, should such a clause be included in an agreement, it was to be placed in such a location that its chances of being seen by the parties who would be bound thereby would be enhanced. Having failed to comply with the pertinent provisions of §10-3-2, the defendant cannot prevent plaintiffs from having the superior court adjudicate their contention that defendant has agreed to reimburse them for the damages they are legally entitled to recover from the uninsured motorist. While it may be, as defendant alleges, that this provision is inappropriate for use in the insurance industry, particularly since the insured never or infrequently signs the policy, the wisdom of retaining this requirement is not for us but for the general assembly. It is on the statute books of our state and its mandate must be obeyed. There is a testimonium clause in this policy but it is separated by many pages and various provisions from the clause requiring arbitration. This policy has been drawn by the insurer and it is charged with the obligation of drawing an agreement that conforms to the statutory directions of the general assembly.

The defendant takes little by the fact that the insurance commissioner of this state has approved the provisions of this policy pursuant to §27-7-2.1, as amended. What we said in *Allstate Ins. Co.* v. *Fusco,* 101 R. I. 350, 223 A.2d 447, relative to the rule-making power of the registrar of

motor vehicles applies equally well in this case to any action of the insurance commissioner. No state official by administrative action can affect the substantive rights of parties as they have been set forth by an affirmative act of the general assembly. The fact that the commissioner approved the provisions of the policy does not give validity to an invalid act.

We find no merit in defendant's contention that an insurance policy is not an agreement within the meaning of chap. 3 of title 10. We disagree. By the express terms of this statute, the only agreement exempt from its provisions is a collective bargaining agreement. Here we invoke that classical canon of statutory construction: Inclusio unius est exclusio alterius—the inclusion of one is the exclusion of the other. Had the general assembly intended to exempt automobile insurance policies, it would have been a simple matter to make this exemption part of the act as it did in the case of the collective bargaining agreement. By its inaction in this regard it is clear that automobile insurance policies are subject to the provisions of the instant legislation.

Having determined that the instant provisions relative to arbitration are nugatory, we believe plaintiff insured having paid for protection from the uninsured motorist is entitled to it. We subscribe to the following sentiments expressed in *Boughton* v. *Farmers Ins. Exchange,* Okla., 354 P.2d 1085, 1089, and alluded to *Wortman* v. *Safeco Ins. Co.,* 227 F. Supp. 468:

> "The primary and essential part of the contract was insurance coverage, not the procedure for determining liability. * * * Such provisions cannot invalidate or hold for naught a liability which the insurer agreed by contract to assume."

This is in keeping with the general rule that an invalid clause relating to arbitration does not render the contract unenforceable since it pertains to the remedy only and is

not a substantial part of the general contract. 5 Am. Jur.2d, Arbitration and Award §18, p. 533. As stated in *Boughton, supra,* the insurer has imposed provisions in the policy which are unenforceable and it cannot deny liability under the insuring agreement by reason of the invalid provisions relating to arbitration.

In each case the plaintiff's appeal is sustained, the summary judgment entered for the defendant is reversed, and each case is remitted to the superior court for further proceedings.

*Thomas W. Pearlman,* for plaintiffs (appellants).

*Higgins, Cavanagh & Cooney, Joseph V. Cavanagh, Kenneth P. Borden,* for defendant (appellee).