292 A.2d 865.

A. C. BEALS COMPANY, INC. *vs.* RHODE ISLAND HOSPITAL *vs.* THE BABCOCK AND WILCOX COMPANY.

JUNE 27, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

276

PAOLINO, J. The Babcock and Wilcox Company, third-party defendant in the above-entitled case and hereinafter referred to as petitioner, brought this petition for certiorari to review an order entered in the Superior Court denying the petitioner's motion to enforce an arbitration agreement. The plaintiff, A. C. Beals Company, Inc., filed a stipulation in this court stating it took no position with regard to this petition. The petitioner and the Rhode Island Hospital,

hereinafter referred to as the defendant, filed memoranda of law in accordance with our provisional Order No. 3. After examining the same we ordered the writ to issue and pursuant thereto the pertinent record has been certified here.

The record shows the following pertinent facts. In 1967 defendant engaged plaintiff as the general contractor for a construction project on defendant's premises in Providence. In July of 1970 plaintiff filed a civil action against defendant in which it sought recovery of $146,504, which it claimed was due from defendant for material and labor. The defendant denied liability.

The defendant then brought a third-party action against petitioner alleging an agreement made in January of 1967, whereby petitioner agreed to furnish and erect certain boilers and related equipment in connection with the construction project in question. In its third-party complaint defendant claims that petitioner failed to perform or negligently performed that agreement and was therefore liable to indemnify defendant for any recovery against it by plaintiff.

The petitioner filed a motion to dismiss the third-party complaint without prejudice on the ground that the Superior Court lacked jurisdiction of the subject matter, or, in the alternative, to stay further proceedings in the third-party action pending hearing and determination by the arbitrators. The motion states that it is based on the arbitration agreement of the parties as set forth in the affidavit attached to the motion. This affidavit was executed by petitioner's sales engineer, one John W. Swan, in support of petitioner's motion to dismiss or to stay.

The contract between petitioner and defendant resulted from a series of documents and correspondence between defendant's Providence office and petitioner's office in Boston. These documents and correspondence are part of the record, having been admitted as exhibits in the Superior

Court. In order to understand the issues raised by this proceeding it is necessary to refer in some detail to the factual background which precipitated this dispute. For this reason we refer to Mr. Swan's affidavit and to the documents and correspondence between these parties.

On or about October 6, 1966, petitioner received in its Boston office a letter from defendant enclosing specifications and soliciting bids for the purchase of two steam-generating units. This letter is dated October 5, 1966. The specifications include an arbitration clause in paragraph 6 of "General Provisions G4." In its brief petitioner states that defendant failed to position the arbitration clause as required by G. L. 1956 (1969 Reenactment) §10-3-2, as amended by P. L. 1939, ch. 659, sec. 2.[1] In response to defendant's solicitation petitioner prepared its bid and by letter dated November 9, 1966, submitted to defendant its bid and written proposal No. P8-6349 for supplying the boilers f.o.b. nearest rail siding and, for an additional amount, delivering them to the jobsite, erecting the equipment and installing the necessary piping. The petitioner's written proposal contained specifications for the boilers it was offering to sell to defendant and the terms of the offer. Those terms found in the part of the proposal labeled "General Conditions" include an arbitration provision[2] requiring the parties to settle by arbitration any controversy or claim arising out of the contract. This arbitration clause appears before the testimonium clause and is separated from it by a sentence which reads: "The Contract Price

---

[1]We shall discuss the provisions of this statute *infra*.

[2]That provision reads as follows:

"Any controversy or claim arising out of or relating to this Contract or the breach thereof, shall be settled by arbitration in accordance with the Rules of the American Arbitration Association, and the judgment upon the award rendered by the Arbitrators may be entered in any Court having jurisdiction thereof."

shall be as per letter or letters from Company to Purchaser, dated November 10, 1966."

Mr. Swan's affidavit continues as follows. Subsequent to the November 9, 1966 letter petitioner engaged in discussions of its offer with defendant's engineers. As a result of those discussions and correspondence between petitioner and defendant's engineers, defendant revised, in part, the specifications of its proposal and bid. By letter dated December 20, 1966, petitioner submitted its revised bid. The revised bid did not include any changes in the general conditions of the offer, including the arbitration provision.

On or about December 29, 1966, petitioner received at its Boston office a purchase order prepared by defendant's engineers and approved by defendant referring to petitioner's bid, written proposal and subsequent revisions. This purchase order, as drafted by defendant, contains a statement immediately above its signature, namely, "Terms as specified in Vendor's Proposal of November 9, 1966."

Pursuant to petitioner's offer and defendant's purchase order defendant had the option of having petitioner deliver the boilers to the jobsite, erect the equipment and install the necessary piping for a price in addition to the price of the boilers. By letter dated January 6, 1967, petitioner wrote to defendant quoting a reduced price for that optional work.

By letter dated January 12, 1967, petitioner resubmitted its bid and its proposal to defendant, revised as of December 22, 1966, reflecting the reduced price and the prior revisions. No change was made in the terms of the offer found in the "General Conditions," including the arbitration provision.

By letters dated January 26, 1967 and January 30, 1967, defendant changed its purchase order to reflect the reduced price quoted for delivery of the boilers to the jobsite, erec-

tion of the equipment and installation of the necessary piping and exercised its option to have petitioner perform that work.

Mr. Swan further alleges in his affidavit that pursuant to that agreement petitioner built the boilers, delivered them to the jobsite, erected the equipment and installed the necessary piping; that it had performed all parts of its agreement; that defendant had made only partial payment of the agreed price and had refused to pay the balance of $42,254 of that price; and that as a result of defendant's failure to provide adequate engineering supervision, petitioner was forced to spend in excess of $40,000 in time and money, beyond that originally contemplated by the parties to complete the agreement.

In paragraph 17 of the affidavit Mr. Swan states that petitioner demands arbitration and asks that judgment be entered dismissing the third-party action so that arbitration may proceed. Because we believe that the substance of paragraph 17 is pertinent here, we quote it in full. It reads as follows:

> "Pursuant to said agreement, B&W hereby demands arbitration of the entire controversy between it and Rhode Island Hospital which arises out of said agreement, including the third-party claim herein, payment of the unpaid portion of the agreed price and payment of the extra expenses incurred by B&W and asks that judgment be entered dismissing this action so that arbitration may proceed."

In paragraph 8 of its petition for certiorari petitioner alleges that defendant, through its attorney, by letter dated May 4, 1970,[3] requested petitioner to arbitrate the dispute

---

[3]For convenience we have attached a copy of this letter as Appendix I.

which is the subject matter of the third-party complaint. The petitioner further alleges therein that defendant based such request upon the arbitration clause contained in the contract between defendant and petitioner.[4]

As noted above petitioner based its motion to dismiss the third-party action on the ground that the parties were bound by the arbitration clause in their contract and therefore the Superior Court lacked jurisdiction of the subject matter of the dispute. We do not have the benefit of a transcript of the hearing in the Superior Court or of the decision of the trial justice. The order entered in that court states that the petitioner's motion was denied. The petitioner claims the trial justice erred in so ruling and has brought this petition to test the validity of such ruling.

Before considering the questions raised by petitioner it may be helpful to discuss briefly the governing statute. Section 10-3-2, reads as follows:

> "Agreements to arbitrate subject to chapter.—When clearly written and expressed and contained in a separate paragraph placed immediately before the testimonium clause or the signatures of the parties, a provision in a written contract to settle by arbitration a controversy thereafter arising out of such contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit, shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract; provided, however, that the provisions of this chapter shall not apply to collective contracts between employers and employees, or between employers and associations of employees, in respect to terms or conditions of employment."

---

[4]It appears from statements of counsel that petitioner initiated an arbitration proceeding through the American Arbitration Association and that that proceeding is now pending but is being held in abeyance awaiting final decision on the motion for a stay of the third-party action.

We had occasion to consider this statute in 1967 in the case of *Donahue* v. *Associated Indemnity Corp.*, 101 R. I. 741, 227 A.2d 187 (1967). We there pointed out that prior to the adoption of the Rhode Island Arbitration Act in 1929 an arbitration clause calling for binding arbitration of future disputes was against public policy. See *Pepin* v. *Societe St. Jean Baptiste*, 23 R. I. 81, 49 A. 387 (1901). We noted in *Donahue* at 746, 227 A.2d at 190, in commenting on the language of the statute providing that the arbitration clause would be enforceable " '[w]hen clearly written and expressed and contained in a separate paragraph placed immediately before the testimonium clause or signature of the parties,' " that this particular provision was unique to our act and we then went on to say at 747, 227 A.2d at 190:

> "We believe that the legislature in promulgating this condition reflected the concern of this court as to the adoption of binding arbitration of future disputes and consequently felt that, should such a clause be included in an agreement, it was to be placed in such a location that its chances of being seen by the parties who would be bound thereby would be enhanced. Having failed to comply with the pertinent provisions of §10-3-2, the defendant cannot prevent plaintiffs from having the superior court adjudicate their contention that defendant has agreed to reimburse them for the damages they are legally entitled to recover from the uninsured motorist. While it may be, as defendant alleges, that this provision is inappropriate for use in the insurance industry, particularly since the insured never or infrequently signs the policy, the wisdom of retaining this requirement is not for us but for the general assembly. It is on the statute books of our state and its mandate must be obeyed. There is a testimonium clause in this policy but it is separated by many pages and various provisions from the clause requiring arbitration. This policy has been drawn by the insurer and it is charged with the obligation of drawing an agreement that conforms to the statutory directions of the general assembly."

In *Donahue*, we held that, since the insurance company, in preparing the policy in question there, had failed to comply with §10-3-2, the plaintiffs were not required to proceed with arbitration under the arbitration clause of the policy.

This statute was before us again in *Calore Rigging Corp.* v. *Sterling Engineering & Constr. Co.*, 106 R. I. 290, 259 A.2d 123 (1969). There we said that we would not modify our holding in *Donahue* and we held that an arbitration provision which is not in accord with the statutory mandate is of no force and effect. After pointing out in *Calore* that the arbitration clause involved in *Calore* did not immediately precede the testimonium clause we concluded that the trial justice correctly held that the position of that clause fell within the proscription of *Donahue*. We also pointed out that if the defendant there wanted relief from the doctrine, the remedy was to be found in the Legislature and not in this court. We reaffirm all we said in those cases and we now proceed to consider petitioner's contentions in the frame work of the statute as interpreted in *Donahue* and *Calore*.

I

The petitioner's first contention is that the contract as drafted by defendant can reasonably be interpreted to comply with the requirement of §10-3-2. The petitioner claims that the contract in its final form consisted of a purchase order from defendant which petitioner received on or about December 29, 1966, and which was amended as to contract price by defendant's letter of January 26, 1967. As we have previously pointed out, immediately above defendant's signature on the purchase order is the language "Terms as specified in Vendor's Proposal of November 9, 1966." The petitioner claims that this incorporation by reference requires that petitioner's proposal No. P8-6349 be read at that place as part of the purchase order; that proposal No.

P8-6349, as amended, concludes with the arbitration clause; and that when proposal No. P8-6349 is inserted into the purchase order, the arbitration clause is placed immediately above defendant's signature on the purchase order. Additionally petitioner claims that proposal No. P8-6349 does in fact conclude with the arbitration clause because the only sentence which follows it, namely, "The Contract Price shall be as per letter or letters from Company to Purchaser, dated November 10, 1966" has been effectively deleted by the provisions of the purchase order itself which itemize a revised contract price.

We do not agree with petitioner's argument. The petitioner admits that the arbitration clause in defendant's specifications is not in the proper location. The petitioner also admits that the clause is not in the proper location in its written proposal No. P8-6349. The only way the clause can be said to be in its proper location, according to petitioner's argument, is if (a) the paragraph reading "The Contract Price shall be as per letter or letters from Company to Purchaser, dated November 10, 1966" has been "effectively deleted" by defendant's subsequent purchase order changing the amount of the contract price and (b) the proposal, with such paragraph deleted, then has been "incorporated by reference" into that purchase order. Section 10-3-2 mandates that an arbitration agreement shall be valid, irrevocable and enforceable, " '[w]hen clearly written and expressed and contained in a separate paragraph placed immediately before the testimonium clause or signature of the parties.' " We do not believe that an arbitration clause which can be properly positioned only by deleting one paragraph and incorporating by reference one document into a subsequent document is "clearly written and expressed" within the meaning of the statute.

Moreover, there has been noncompliance with the statute in one other respect. There are no signatures on either

the original or amended proposal No. P8-6349; nor do those documents contain a testimonium clause. Since there are no signatures and no testimonium clauses, the arbitration clause does not appear "immediately before the testimonium clause or signature of the parties." .

## II

The petitioner next contends that, if there is doubt as to whether the arbitration agreement complies with the requirements of the Rhode Island statute, it should be held enforceable through an application of the Massachusetts Uniform Arbitration Statute. The Massachusetts statute, Mass. Ann. Laws, ch. 251 (1959), is similar to our statute, except for our requirement as to the location of the agreement in relation to the signatures or testimonium clause. The petitioner argues that the final act which constituted the making of the contract was performed in Massachusetts and therefore Massachusetts law should apply; that the arbitration agreement meets all the requirements of the Uniform Arbitration Act of Massachusetts and is enforceable thereunder; and that the choice of applicable law, whether based on loci contracts or on the doctrine enunciated in *Woodward* v. *Stewart*, 104 R. I. 290, 243 A.2d 917 (1968), should be the Massachusetts statute and the arbitration should be enforced thereunder.

The record, as we read it, does not support petitioner's assertion that the final act which constituted the making of the contract took place in Massachusetts. In fact, the opposite is true as is evidenced by the documents and correspondence between petitioner and defendant and by Mr. Swan's affidavit in support of petitioner's motion to dismiss. We refer to them briefly. The defendant originally submitted specifications to petitioner seeking its bid (offer). The petitioner submitted its offer, that is proposal No. P8-6349. The defendant reviewed the offer and submitted a counteroffer in the form of a purchase order. The petitioner

responded by submitting a counteroffer; amended P8-6349, with covering letter dated January 12, 1967, which incorporated the changes in its original proposal requested by defendant in its purchase order, but changed the price on one contract item. This counteroffer was accepted by defendant in Rhode Island by (a) letter dated January 26, 1967, by incorporation by reference of its earlier purchase order as amended to accept petitioner's new contract price unit and (b) by letter dated January 30, 1967, in which defendant exercised its option of having petitioner perform this work. This is supported by paragraphs 11, 12 and 13 in Mr. Swan's affidavit where he said:

"11. By letter dated January 12, 1967 B&W resubmitted its bid and its proposal, revised as of December 22, 1966, reflecting the reduced price and the prior revisions, to Rhode Island Hospital. A copy of that letter and the revised proposal is annexed hereto as Exhibit G. No change was made in the terms of the offer found in the 'general conditions', including the arbitration provision.

"12. By letters dated January 26, 1967 and January 30, 1967 Rhode Island Hospital changed its purchase order to reflect the reduced price quoted for delivery of the boilers to the job site, erection of the equipment and installation of the necessary piping and exercised its option to have B&W perform that work. Copies of those letters are annexed hereto as Exhibit H.

"13. Pursuant to that agreement B&W built the boilers, delivered them to the job site, erected the equipment and installed the necessary piping."

It is clear from what we have said above that the final act which constituted the making of the contract took place in Rhode Island.

It is equally clear to us that Rhode Island has the most significant interests in this matter. The defendant is a Rhode Island corporation with its principal office here. The boilers were to be delivered to and installed here. The contract was finally accepted here. We perceive of no rea-

son why we should apply Massachusetts law here.[5]

Thus whatever theory we follow, we are satisfied that Rhode Island law should be applied here. As we have stated above the provisions of §10-3-2 have not been complied with in the case at bar.

## III

The petitioner next argues that defendant should be estopped from challenging any formal defect in the agreement which it itself drafted and that neither *Donahue* nor *Calore* presented the question of whether a party who drafts the arbitration clause and inserts it into the contract can later turn around and claim it is unenforceable because it was not inserted in the right place. The petitioner claims that the rationale behind the statutory provision is to furnish some assurance that the party knows of the arbitration clause and that the provision, if applied to this case, becomes a hollow formality serving no purpose whatever because defendant, as drafter of the contract, knew that the arbitration clause was in the contract.

The short answer to petitioner's argument is that defendant did not draft the arbitration clause involved in the case at bar. The operative document here is petitioner's proposal No. P8-6349 which was drafted and submitted by petitioner and it is the arbitration clause in the proposal which petitioner is seeking to enforce. *Peacock Realty Co.* v. *E. Thomas Crandall Farm, Inc.*, 108 R. I. 593, 278 A.2d 405 (1971), cited by petitioner, is not apposite here. If there is an ambiguity or any omission, the agreement must be construed against the drafting party, in this case, the petitioner. *Zifcak* v. *Monroe*, 105 R. I. 155, 249 A.2d 893 (1969).

---

[5]On this record we need not, and do not, decide whether the doctrine enunciated in *Woodward* v. *Stewart*, 104 R. I. 290, 243 A.2d 917 (1968), applies to contract cases.

## IV .

The petitioner's final contention is that defendant, by its letter of May 4, 1970 to petitioner, requested arbitration based on its own arbitration agreement; that it has thereby affirmed its agreement to arbitrate; and that it has therefore waived its right to assert §10-3-2 as a ground for non-enforceability. We find no merit to this argument. It seems to us that petitioner reads more into the letter than is actually there. The May 4, 1970 letter refers specifically to the arbitration clause on page 26 of petitioner's proposal No. P8-6349 and asks petitioner whether it would be willing to arbitrate the entire dispute, including plaintiff's claim. The letter also states that it would be necessary to agree upon the procedure and method of arbitration to be utilized. There is nothing in the letter indicating that defendant affirmed or admitted the validity of any arbitration clause or that it waived any legal defect therein. On this record we do not reach, and therefore need not determine, whether and under what circumstances a party to an arbitration agreement can waive the provisions of §10-3-2.

The petition for certiorari is denied and dismissed, the writ heretofore issued is quashed, and the record certified is ordered returned to the Superior Court.

## APPENDIX I

May 4, 1970

The Babcock & Wilcox Company
Barberton
Ohio
Attention: Vice President in Charge of Sales
Gentlemen:

Re: Rhode Island Hospital — Boiler Contract
No. FM-1510

We represent Rhode Island Hospital, which entered into the contract described above with you and under which you

agreed to supply and erect certain boilers and related equipment at the Hospital's power plant expansion project.

Reference is made to the letter dated December 19, 1969 from the Hospital to you advising you of a claim received by the Hospital from A. C. Beals Company, Inc. for reimbursement for additional costs in connection with the power plant project. As stated in that letter, the Hospital holds you responsible for any damages the Hospital may incur in connection with such claim by Beals due to your late delivery and installation of the boilers and other failures of performance under the said contract. The Hospital has now received a demand for arbitration pursuant to a contractual provision in its contract with Beals. A copy of the demand is enclosed for your information.

In the contract between the Hospital and you, it is provided on page 26:

> "Any controversy or claim arising out of or relating to this Contract or the breach thereof, shall be settled by arbitration in accordance with the Rules of the American Arbitration Association, and the judgment upon the award rendered by the Arbitrators may be entered in any Court having jurisdiction thereof."

Rather than make a formal demand of arbitration at this time, would you kindly inform us as to whether or not you would be willing to submit to arbitration with the Hospital and Beals so that the entire matter can be arbitrated in one proceeding. It would also be necessary to agree upon the procedure and method of arbitration to be utilized.

Your early response will be appreciated.

Very truly yours,

(signed)         Paul F. Greene

Enclosure

*Jordan, Hanson & Curran, A. Lauriston Parks,* for plaintiff.

*Edwards & Angell, Stephen A. Fanning, Jr., Paul F. Greene,* for Rhode Island Hospital; *Higgins, Cavanagh & Cooney, Joseph V. Cavanagh,* for third-party defendant and petitioner: The Babcock and Wilcox Company.