**SW INDUSTRIES, INC.**

v.

**AETNA CASUALTY & SURETY CO., alias: the Employers' Liability Assurance Corporation, Ltd., alias; the Travelers Insurance Company, alias; American Home Assurance Company, alias; Lumbermens Mutual Casualty Company, alias; National Union Fire Insurance Company of Pittsburgh, Pa., alias; John Richard Ludbrooke Youell, in his individual and representative capacity on behalf of certain underwriters and insurance companies.**

**Civ. A. No. 86–0302 P.**

United States District Court, D. Rhode Island.

Jan. 28, 1987.

Michael DeFanti, Gerald J. Petros, Hinckley, Allen, Tobin & Silverstein, Providence, R.I., for Lumbermens Mut.

Robert D. Parrillo, Hanson, Curran & Parks, Providence, R.I., for Lloyd's London.

John H. Blish, Blish & Cavanagh, Providence, R.I., for Weavers Companies.

Robert Lovegreen, Gidley, Lovegreen & Sarli, Providence, R.I., for Aetna Cas. & Surety Co.

Hugh L. Moore, Jr., Providence, R.I., for American Home Assur. Co. and National Union Fire Ins. Co. of Pittsburgh, Pa.

Joseph A. Kelly, C. Russell Bengston, Providence, R.I., for Travelers Ins. Co.

## MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

The plaintiff in this action, SW Industries, Inc. ("SW"), has filed a series of motions against a number of insurance companies ("the Insurance Companies"), seeking to obtain indemnification for a $3,650,000 tort liability incurred by one of its manufacturing divisions, located in Ohio. Prior to the initiation of these proceedings, one of the Insurance Companies, Lumbermens Mutual Casualty Co. ("Lumbermens"), instituted proceedings in an Ohio federal court, seeking a declaratory judgment that would find Lumbermens not bound to indemnify SW.

Three motions are presently before this Court. First, SW has moved for reconsideration of this Court's Memorandum and Order that denied an earlier motion for preliminary injunctive relief filed by SW, *SW Industries v. Aetna Casualty & Surety Co., et. al.,* 646 F.Supp. 819 (D.R.I.1986). Second, SW has moved for partial summary judgment on the question of the Insurance Companies' obligation to defend SW in the underlying tort litigation. Third, Lumbermens has moved to dismiss or stay the instant proceedings, or in the alternative, to transfer venue to the Northern District of Ohio. For reasons discussed herein, I am granting Lumbermens' motion to stay these proceedings. Further review of SW's motions for reconsideration and for partial summary judgment is therefore also stayed.

### Background

The facts and procedural history of this case are described in detail in my Memorandum and Order, *supra,* denying SW's motion for a preliminary injunction. Briefly, the current insurance litigation is a response to the underlying tort litigation. The tort litigation was initiated by Carl Viock ("Viock"), an employee of SW's manufacturing plant in Sandusky, Ohio known as the Stowe-Woodward Division ("Stowe-Woodward"). Viock sued Stowe-Woodward for extensive lung damage that had been diagnosed as caused by exposure to chemicals at work. Viock's claim alleged that Stowe-Woodward had intentionally exposed him to toxic chemicals. The suit proceeded under an intentional torts exception to Ohio's bar against employee lawsuits upon injuries covered by workers' compensation. The jury found for Viock, and final judgment was entered on June 26, 1984 awarding Viock and his family $1,000,000 in compensatory damages and $2,500,000 in punitive damages. *Viock v. Stowe-Woodward Co.,* No. 44358 (Erie County Ct. of C.P. June 26, 1984). On appeal, the compensatory damages amount was increased by $150,000, bringing the total damages award to $3,650,000. *Viock*

*v. Stowe-Woodward Co.*, No. E–84–27 (Erie County Ct.App. March 14, 1986) [Available on WESTLAW, OH–CS database]. According to the pleadings, SW has since filed a motion to certify an appeal, which is pending before the Ohio Supreme Court.

The insurance litigation commenced on May 9, 1986, when Lumbermens filed a complaint in the federal district court for the Northern District of Ohio. Asserting diversity of citizenship jurisdiction, 28 U.S.C. section 1332, Lumbermens requested a declaratory judgment holding, among other things, that SW was not entitled to indemnification from Lumbermens for any damages paid to the Viocks. Lumbermens filed an amended complaint on May 30, 1986 adding the other Insurance Companies as defendants and requesting an additional declaratory ruling as to their liabilities to SW.

On May 15, 1986 SW filed a complaint in this Court against the Insurance Companies, asserting diversity of citizenship jurisdiction, 28 U.S.C. section 1332. SW filed an amended complaint on May 21, 1986, seeking two forms of relief: first, a declaratory judgment that the damages awarded to the Viocks are covered under policies issued by the Insurance Companies; and second, damages for the Insurance Companies' alleged bad faith in denying that they are bound to indemnify SW for the Viock damages.

## Discussion

Lumbermens urges this Court to dismiss or stay SW's action, or in the alternative, to transfer venue to the Northern District of Ohio for consolidation of this action with Lumbermens' earlier-filed suit against SW. Lumbermens argues that this Court should defer to the first-filed action in Ohio, whereas SW contends that this Court should proceed to trial, both because the choice of venue in such a case should rest with the insurance policyholder and because the preferred venue is the one that can host the more comprehensive action. Both sides contend that their venue prefer-

ences are more convenient. I consider each of these arguments in turn.

■ Lumbermens is correct in asserting that "where two suits involve the same issues, and prosecution of both would entail duplicative litigation and a waste of judicial resources, the first filed suit is generally preferred," *Cordell Engineering v. Picker International Inc.*, 540 F.Supp. 1316, 1318 (D.Mass.1982); *see also Small v. Wageman*, 291 F.2d 734, 736 (1st Cir. 1961). The preference for the first-filed action is not a per se rule, but rather a policy governed by equitable considerations: "the forum where an action is first filed is given priority over subsequent actions, unless there is 'a showing of balance of convenience in favor of the second action,' or there are special circumstances which justify giving priority to the second," *Gemco Latinoamerica, Inc. v. Seiko Time Corp.*, 623 F.Supp. 912, 916 (D.P.R.1985) (citations omitted); *see also, Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979); *Codex Corp. v. Milgo Electronic Corp.*, 553 F.2d 735, 737 (1st Cir.), *cert. denied*, 434 U.S. 860, 98 S.Ct. 185, 54 L.Ed.2d 133 (1977); *Columbia Plaza Corp. v. Security National Bank*, 525 F.2d 620, 627 (D.C.Cir. 1975).

The applicability of the first-filed rule thus turns on two subsidiary inquiries: whether any special circumstances require deference to the later-filed action; or whether the balance of convenience favors the later-filed action.

### A. Special Circumstances

SW contends that two special circumstances require this Court to proceed to trial, in spite of the fact that this action was later-filed. First, SW contends that in insurance litigation, the forum choice of the insured party merits preference over that of the insurer. Second, SW contends that, because its lawsuit includes claims for damages, it merits preference over Lumbermens' Ohio action, which includes only claims for declaratory relief.

■ In support of its contention that the forum choice of the insured merits preference, SW relies on a quotation from *Moore's Federal Practice,* which in context reads as follows:

> Insurance attorneys often try to make the most of supposed tactical and psychological advantages adhering to this or that type of action or "counter-action" in state or federal forum. But the declaratory action is not intended to be used as a foil for procedural fencing. The choice of forum should not depend upon whether the insured or the insurance company is first to commence suit. The party asserting a right against an insurance company is normally the one having the privilege of choosing the forum. Where, as in the *Haworth* case, the insurance company is suffering detriment by the failure of the insured-claimant to assert his right in court, then the insurance company may quite properly take the initiative and bring an action to determine its liability.

6A *Moore's Federal Practice* ¶ 57.19 at 57–207 (citations omitted). The crucial sentence, stating that the insured party "is normally the one having the privilege of choosing the forum," is devoid of citation to any supporting authority. Whether the sentence purports to prescribe a rule of preference or merely to describe what happens in the majority of insurance cases is not clear. Reading the sentence in context, it appears that any solicitude expressed toward the insured party's forum choice derives from a concern to protect insurance consumers against the evils of "procedural fencing." Although the text omits to identify the evils of procedural fencing, logic suggests that they include such burdens as tactical delays and inconvenient fora. Neither of these evils is apparent in Lumbermens' initiation of proceedings in the Northern District of Ohio. As discussed at length in part I, B, *infra,* the Ohio district is hardly an inconvenient venue for SW. It is the situs of the injury that gave rise to the alleged insurance liability, and it is the location of most witnesses and documents that would be needed in the event that the facts of the injury must be proved. More important, it is the situs of SW's subsidiary, Stowe-Woodward, that incurred the damages giving rise to the current insurance litigation.

■ In sum, my interpretation and application of the authority cited by SW does not support the view that the first-filed rule must give way simply because the later-filed action reflects the insured party's forum choice. This conclusion is reinforced by those cases in which courts have granted insurance companies' motions to transfer venue in derogation of the insured parties' forum choices. *See, Upjohn Co. v. General Accident Insurance Co. of America, et al.,* 581 F.Supp. 432 (D.D.C.1984) (transferring insured parties' later-filed case to venue of insurance companies' first-filed action); *Credit Alliance Corp. v. Nationwide Mutual Insurance Co.,* 433 F.Supp. 688 (S.D.N.Y.1977) (granting insurance company's motion to transfer venue in derogation of insured party's forum choice); *see also Solomon v. Continental American Life Insurance Co.,* 472 F.2d 1043 (3d Cir.1973) (affirming district court's transfer of insured parties' first-filed action to venue of insurance companies' later-filed action).

The second special circumstance relied on by SW is the inclusion of bad faith allegations and damages claims in their later-filed action, in contrast to the purely declaratory relief sought by Lumbermens in the Ohio action. Under these circumstances, SW contends, the first-filed · rule is trumped both by the general rule that "federal courts should select the more comprehensive suit," SW's memorandum objecting to Lumbermens motion to dismiss at 20, and by the specific rule that "a declaratory judgment action should be stayed and priority accorded to an action in which damages are sought," *id.* at 21.

■ To the extent that there exists a general rule favoring more comprehensive actions, I do not believe that it is apposite to the facts of this case. All but one of the cases cited by SW that suggest such a rule

dealt with venue choices in which the disfavored forum either had difficulty exercising personal jurisdiction over all the interested parties or lacked subject-matter jurisdiction to hear all the issues sought to be raised. *See, Kerotest Manufacturing Co. v. C–O Two Fire Equipment Co.*, 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952) (affirming a circuit court's stay of a later-filed declaratory action, where all interested parties could be joined only in the first filed damages action); *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491, 495–98, 62 S.Ct. 1173, 1176–77, 86 L.Ed. 1620 (1942) (ordering case remanded to district court to determine whether issues raised in later-filed federal action could be heard in first-filed state proceeding); *American Motorists Insurance Co. v. Philip Carey Corp.*, 482 F.Supp. 711 (S.D. N.Y.1980) (ordering stay of first-filed declaratory judgment action involving only three of fourteen interested insurance companies, where later-filed action included all fourteen insurers); *Aetna Insurance Co. v. Chicago, Rock Island and Pacific Railroad Co.*, 127 F.Supp. 895 (D.Kan.1955), *aff'd*, 229 F.2d 584 (10th Cir.1956) (dismissing a first-filed declaratory action and remanding to state court a later-filed state proceeding that had been removed to federal court, because only nine of the 47 insurance companies involved in the state proceeding had claims that satisfied the federal diversity jurisdictional amount). The only case cited by SW where the disfavored forum suffered no jurisdictional drawbacks involved a stay of a first-filed declaratory action that involved only the validity of a collateral estoppel defense against a later-filed government suit for civil penalties. *Ven-Fuel, Inc. v. Department of the Treasury, et al.*, 673 F.2d 1194 (11th Cir.1982). The opinion merely affirmed the discretion of the district court to refrain from exercising its jurisdiction in such a case; it did not rely upon any rule that would have required the district court to exercise such self-restraint. Based upon this review of the above cases, I conclude that the preference for the more comprehensive action has no relevance to the instant litigation, since this case presents a choice between two federal proceedings that are equally capable of hearing all interested parties and entertaining all issues sought to be raised.

■ The more specific rule cited by SW, that declaratory judgments should be stayed in favor of damages actions, is a doctrine that no longer commands support in the federal courts. Older cases express the view that damages actions are inherently preferable: "the discretion to grant or refuse the declaratory relief ... should not be exercised for the purpose of trying issues in cases already pending," *Aetna Casualty & Surety Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir.1937). But this view has been definitively rejected by more recent cases. *See, Sears, Roebuck & Co. v. Zurich Insurance Co.*, 422 F.2d 587, 590 (7th Cir.1970) ("[T]he mere pendency of another suit is not enough in itself to refuse a declaration." (citations omitted)); *Scott & Fetzer Co. v. McCarty*, 450 F.Supp. 274, 277 (N.D.Ohio 1977) ("Dismissal of a declaratory judgment is not justified by mere pendency of similar litigation elsewhere." (citations omitted)); *Wong v. Bacon*, 445 F.Supp. 1177, 1187 (N.D.Cal.1977) ("The existence of a pending state proceeding involving the same claim for restitution does not automatically make declaratory relief improper." (citations omitted)); *Aetna Casualty & Surety Co. v. Hatridge*, 282 F.Supp. 604, 606 (W.D.Ark.1968), *aff'd*, 415 F.2d 809 (8th Cir.1969) ("It is well settled that the mere pendency of another action involving the same issues does not of itself preclude the exercise of declaratory jurisdiction."). This more recent view is reflected in Rule 57 of the Federal Rules of Civil Procedure, which states, "[t]he existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate."

Finally, SW's argument that actions for damages are inherently preferable to declaratory actions is not only unsupported by law, but also highly unsuited to the procedural posture of this case. According to the pleadings, SW's appeal petition in

the Viock tort litigation is pending before the Ohio Supreme Court. Until that litigation has run its course, neither SW nor the Insurance Companies are in a position to ask for more than declaratory relief with respect to the main question raised in this insurance litigation, i.e., whether SW is entitled to indemnification for Viock's damages. Although SW has included a damages claim with its request for declaratory relief here, it is a substantial overstatement to characterize this action as primarily a damages claim, in seeking to invoke a rule of preference for damages claims over declaratory actions. The core issue of both the Ohio and Rhode Island actions is declaratory in nature, which fact only reinforces my conclusion that neither of SW's asserted preference rules is apposite here.

### B. Balance of Convenience

As discussed, *supra,* the operation of the first-filed rule can be defeated by a showing that the balance of convenience favors the venue of the later-filed action. Decisions under both the common law doctrine of *forum non conveniens* and the statutory provision for transfer of venue, 28 U.S.C. section 1404(a), have generated a number of factors that serve as guides in balancing the relative convenience of different fora. *See, Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947) (factors governing *forum nonconveniens* inquiry); 15 *Wright, Miller & Cooper, Federal Practice & Procedure (Wright, Miller & Cooper)* sections 3847 through 3854 (factors governing transfer of venue statute). Five of these factors either have been argued by the parties or are implicated by the circumstances of the litigation, and I review these separately below.

### 1. Plaintiff's Forum Choice

■■ Under both the doctrine of *forum non conveniens* and the statutory provision for transfer of venue, the plaintiff's forum choice is generally preferred, unless there is a strong balance favoring the defendant's alternative forum choice. *Leesona Corp. v. Duplan Corp.,* 317 F.Supp.

290, 299 (D.R.I.1970), *discussing Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). But this preference is inoperative in a later-filed action, where the plaintiff's claims would constitute compulsory counterclaims in the defendant's earlier-filed action. *Leesona, supra,* at 299. SW's requests for declaratory relief and for damages clearly constitute compulsory counterclaims in Lumbermens' Ohio action. *See, Columbia Plaza Corp. v. Security National Bank,* 525 F.2d 620, 625 (D.C.Cir.1975); *Scott & Fetzer Co. v. McCarty,* 450 F.Supp. 274, 275–76 (N.D. Ohio 1977).

■■ On the other side of the balance, SW contends that "Lumbermens' choice of forum in the Ohio action is to be given little consideration where (as is true here) it has chosen a situs away from its 'home turf.'" SW's memorandum objecting to Lumbermens' motion to dismiss, stay or transfer venue at 19, *citing General Instrument Corp. v. Mostek Corp.,* 417 F.Supp. 821, 822–23 (D.Del.1976). But the term cited by SW in support of this proposition does not, when read in context, lead to the conclusion drawn by SW:

> [W]here the plaintiff has not brought suit on its 'home turf,' the convenience to plaintiff of litigating in its choice of forum is not as great as it would be were it litigating at or near its principal place of business *or the site of the activities at issue in the lawsuit.*

*Mostek, supra,* at 822–23 (emphasis added). By its location in the district of both Carl Viock's injury and the underlying tort litigation, Lumbermens' Ohio action merits the preference due under *Mostek* to litigation at "the site of the activities at issue in the lawsuit."

### 2. Convenience of the Parties

This action appears to involve three parties for whom Providence is clearly the more convenient forum and five parties for whom neither forum can be said to offer greater convenience. Exhibit A appended to SW's second amended complaint lists the states of incorporation and principal places

of business of the Insurance Companies. The three companies for which Providence is the more convenient forum include two insurers with principal places of business in Hartford, and one with its principal place of business in Boston. Four of the named insurance parties for which neither forum is more convenient include two companies with principal places of business in New York, one with its principal place of business in Illinois, and one representative party, John Richard Ludbrooke Youell ("Youell"), who by a stipulation entered November 25, 1986 represents certain underwriters at Lloyd's, London and thirteen insurers, most of which are based in the United Kingdom. The fifth party for which neither forum is more convenient is SW, which has substantial business facilities in both Rhode Island and Ohio.

### 3. Convenience of the Witnesses.

■ None of the parties have identified with any specificity the witnesses likely to be called. The problem of estimating the locations of potential witnesses is compounded by uncertainty about the types of evidence that will be needed at trial. Clearly, evidence will be needed concerning the text and interpretation of the policies issued by the Insurance Companies to SW. Because such witnesses can be expected to be drawn largely from the parties, their relative convenience of access to the two fora follows the preceding analysis of the convenience of the parties. That is, the balance tips somewhat in favor of Rhode Island as to witnesses whose testimony about the insurance policies is needed.

Depending on the collateral estoppel effects of the Viock litigation, however, testimony may also be needed about the circumstances surrounding Carl Viock's injuries. It is not clear, for instance, whether the jury's finding that Stowe-Woodward intentionally exposed Carl Viock to toxic chemicals is dispositive on the question of whether Stowe-Woodward's liability is the result of an intentional act within the meaning of the insurance policy exclusions. *See*, memorandum in support of SW's motion for partial summary judgment at 10–13. If SW is not collaterally estopped from litigating the issue of intentionality, then a number of witnesses may be called to testify about the circumstances surrounding Carl Viock's injury. Nearly all of these witnesses can be expected to come from Ohio, which fact would tip the balance of convenience decisively in favor of Ohio as far as witnesses are concerned.

### 4. Documents

Insofar as documentary evidence is likely to follow the contours of testimonial evidence, the balance of convenience as to the transportation of documents is the same as the balance with respect to witnesses. As the preceding analysis makes clear, this balance has two possible outcomes: either a moderate preference for Rhode Island, or a clear preference for Ohio.

■ The storage of documents during trial also weighs into this balance. *Leesona Corp. v. Duplan Corp.*, 317 F.Supp. 290, 301 (D.R.I.1970). For SW, documents can be conveniently stored at either forum, since the home offices are in Rhode Island and the manufacturing division is in Ohio. Little information is available regarding the Insurance Companies, beyond the fact that the Rhode Island forum could be serviced by offices in Boston and Hartford, and the fact that the Ohio forum could be serviced by a Lumbermens branch office in Sandusky, Ohio. Neither forum appears to be preferable for document storage.

### 5. Familiarity With State Law

Both Lumbermens and SW have placed great emphasis on the "appropriateness ... in having the trial of a diversity case in a forum that is at home with the state law that must govern the case...." *Van Dusen v. Barrack*, 376 U.S. 612, 645, 84 S.Ct. 805, 824, 11 L.Ed.2d 945 (1964). This emphasis is somewhat misplaced, for although the applicable law "has been mentioned as a factor in some cases, ... it seems not to have been given great weight, particularly when the applicable state law appears

clear." 15 *Wright, Miller & Cooper* § 3854 at 466–67 (citations omitted).

Although recent case law has rendered matters ambiguous, Rhode Island appears to follow the rule that the law of the place of contracting governs all questions of contract interpretation. *See, Bartholomew v. Insurance Co. of North America,* 502 F.Supp. 246, 250 (D.R.I.1980), *aff'd sub nom., Bartholomew v. Appalachian Insurance Co.,* 655 F.2d 27 (1st Cir.1981) ("In Rhode Island, the law of the place where the insurance contract was made governs its construction."); *Coderre v. Travelers Insurance Co.,* 48 R.I. 152, 155, 136 A. 305 (1927); *Owens v. Hagenbeck-Wallace Shows Co.,* 58 R.I. 162, 171–72, 192 A. 158, 163 (1937) (declining to follow *dictum* in *Hunt v. Jones,* 12 R.I. 265 (1879), which had suggested that matters of performance are to be interpreted by the law of the place of performance); *but see Albany Insurance Co. v. Wisniewski,* 579 F.Supp. 1004, 1013 (D.R.I.1984) (interpreting dictum from *A.C. Beals Co. v. Rhode Island Hospital,* 110 R.I. 275, 292 A.2d 865 (1972), as abandoning the *lex loci contractu* rule); *Roy v. Star Chopper Co.,* 442 F.Supp. 1010, 1015 (D.R.I. 1977), *aff'd,* 584 F.2d 1124 (1st Cir.1978), *cert. denied,* 440 U.S. 916, 99 S.Ct. 1234, 59 L.Ed.2d 466 (1979) (same); *A.C. Beals Co. v. Rhode Island Hospital,* 110 R.I. 275, 292 A.2d 865 (1972) (dictum suggesting that the interest-weighing choice of law rule might apply in contract interpretation); *id.* at 287, 292 A.2d at 871, n. 5 ("On the record, we need not, and do not, decide whether the doctrine [of interest-weighing] applies to contract cases.").

Still, this does not significantly enhance SW's argument. The places where the various insurance contracts were made have been identified by SW as "Rhode Island or ... Massachusetts or ... London," affidavit of Janice Davis at 4, submitted with SW's objection to Lumbermens' motion to dismiss or stay or transfer venue; *see also,* Lumbermens' memorandum in support of motion at 11 (identifying Boston as a place of contracting for Lumbermens policies). On the whole, therefore, the Rhode Island federal court would not be significantly more familiar with the applicable law, regardless of what law would apply in the Ohio action.

### Conclusion and Order

Considering all five of the above factors together, I find that the balance of convenience is too equivocal to warrant my proceeding to trial in derogation of the first-filed rule. This conclusion is particularly merited in light of those cases holding that the decision as to which forum is more appropriate is a prerogative of the court hearing the first-filed action. *See, West Gulf Maritime Association v. ILA Deep Sea Local 24,* 751 F.2d 721, 730 (5th Cir. 1985); *Gemco Latinoamerica, Inc. v. Seiko Time Corp.,* 623 F.Supp. 912, 916 (D.P.R.1985); *Donaldson, Lufkin & Jenrette v. Los Angeles County,* 542 F.Supp. 1317, 1321 (S.D.N.Y.1982).

I hereby order this action stayed until such time as the District Court for the Northern District of Ohio either finally adjudicates the action filed by Lumbermens or chooses to refrain from exercising its jurisdiction over the Lumbermens action. Further review of other motions pending in this case is therefore also stayed.

So ordered.