USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-1554 IONICS, INC., Plaintiff - Appellee, v. ELMWOOD SENSORS, INC., Defendant - Appellant. ____________________ ERRATA SHEET The opinion of this court issued on April 8, 1997 is amended as follows: Page 9, line 15 change "Roto-Lith's" to "Bartlett's" Page 12, line 8 insert period between "(1)" and footnote "5" UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 96-1554 IONICS, INC., Plaintiff - Appellee, v. ELMWOOD SENSORS, INC., Defendant - Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Morris E. Lasker,* Senior U.S. District Judge] __________________________ ____________________ Before Torruella, Chief Judge, ___________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ _____________________ Daryl J. Lapp, with whom Thane D. Scott, Stephen L. Coco and _____________ ______________ _______________ Palmer & Dodge LLP were on brief for appellant. __________________ Tina M. Traficanti, with whom Anthony M. Doniger and ____________________ ____________________ Sugarman, Rogers, Barshak & Cohen, P.C. were on brief for ___________________________________________ appellee. ____________________ April 8, 1997 ____________________  ____________________ * Of the Southern District of New York, sitting by designation. TORRUELLA, Chief Judge. Ionics, Inc. ("Ionics") TORRUELLA, Chief Judge. ____________ purchased thermostats from Elmwood Sensors, Inc. ("Elmwood") for installation in water dispensers manufactured by the former. Several of the dispensers subsequently caused fires which allegedly resulted from defects in the sensors. Ionics filed suit against Elmwood in order to recover costs incurred in the wake of the fires. Before trial, the district court denied Elmwood's motion for partial summary judgment. The District Court of Massachusetts subsequently certified to this court "the question whether, in the circumstances of this case, 2-207 of M.G.L. c. 106 has been properly applied." Order of the district court, November 6, 1995. I. Standard of Review I. Standard of Review We review the grant or denial of summary judgment de __ novo. See Borschow Hosp. & Medical Supplies v. C sar Castillo, ____ ___ __________________________________ _______________ Inc., 96 F.3d 10, 14 (1st Cir. 1996). ____ II. Background II. Background The facts of the case are not in dispute. Elmwood manufactures and sells thermostats. Ionics makes hot and cold water dispensers, which it leases to its customers. On three separate occasions, Ionics purchased thermostats from Elmwood for use in its water dispensers.1 Every time Ionics made a purchase of thermostats from Elmwood, it sent the latter a purchase order form which contained, in small type, various "conditions." Of the20 conditions onthe order form,two areof particular relevance:  ____________________ 1 Orders were placed in March, June, and September 1990. -2- 18. REMEDIES -- The remedies provided Buyer herein shall be cumulative, and in addition to any other remedies provided by law or equity. A waiver of a breach of any provision hereof shall not constitute a waiver of any other breach. The laws of the state shown in Buyer's address printed on the masthead of this order shall apply in the construction hereof. 19. ACCEPTANCE -- Acceptance by the Seller of this order shall be upon the terms and conditions set forth in items 1 to 17 inclusive, and elsewhere in this order. Said order can be so accepted only on the exact terms herein and set forth. No terms which are in any manner additional to or different from those herein set forth shall become a part of, alter or in any way control the terms and conditions herein set forth. Near the time when Ionics placed its first order, it sent Elmwood a letter that it sends to all of its new suppliers. The letter states, in part: The information preprinted, written and/or typed on our purchase order is especially important to us. Should you take exception to this information, please clearly express any reservations to us in writing. If you do not, we will assume that you have agreed to the specified terms and that you will fulfill your obligations according to our purchase order. If necessary, we will change your invoice and pay your invoice according to our purchase order. Following receipt of each order, Elmwood prepared and sent an "Acknowledgment" form containing the following language in small type: THIS WILL ACKNOWLEDGE RECEIPT OF BUYER'S ORDER AND STATE SELLER'S WILLINGNESS TO SELL THE GOODS ORDERED BUT ONLY UPON THE TERMS AND CONDITIONS SET FORTH HEREIN AND -3- ON THE REVERSE SIDE HEREOF AS A COUNTEROFFER. BUYER SHALL BE DEEMED TO HAVE ACCEPTED SUCH COUNTEROFFER UNLESS IT IS REJECTED IN WRITING WITHIN TEN (10) DAYS OF THE RECEIPT HEREOF, AND ALL SUBSEQUENT ACTION SHALL BE PURSUANT TO THE TERMS AND CONDITIONS OF THIS COUNTEROFFER ONLY; ANY ADDITIONAL OR DIFFERENT TERMS ARE HEREBY OBJECTED TO AND SHALL NOT BE BINDING UPON THE PARTIES UNLESS SPECIFICALLY AGREED TO IN WRITING BY SELLER. Although this passage refers to a "counteroffer," we wish to emphasize that this language is not controlling. The form on which the language appears is labelled an "Acknowledgment" and the language comes under a heading that reads "Notice of Receipt of Order." The form, taken as a whole, appears to contemplate an order's confirmation rather than an order's rejection in the form of a counteroffer. It is undisputed that the Acknowledgment was received prior to the arrival of the shipment of goods. Although the district court, in its ruling on the summary judgment motion, states that "with each shipment of thermostats, Elmwood included an Acknowledgment Form," Order of the District Court, August 23, 1995, this statement cannot reasonably be taken as a finding in support of the claim that the Acknowledgment and the shipment arrived together. First, in its certification order, the court states that "[t]he purchaser, after receiving the Acknowledgment, _____ accepted delivery of the goods without objection." Order Pursuant to 28 U.S.C. 1292(b), Nov. 6, 1995 (emphasis added). This language is clearer and more precise than the previous statement and suggests that the former was simply a poor choice -4- of phrasing. Furthermore, Ionics has not disputed the arrival time of the Acknowledgment. In its Memorandum in Support of Defendant's Motion for Partial Summary Judgment Elmwood stated, under the heading of "Statements of Undisputed Facts," that "for each of the three orders, Ionics received the Acknowledgment prior to receiving the shipment of thermostats." Memorandum in Support of Defendant's Motion for Partial Summary Judgment, at 3. In its own memorandum, Ionics argued that there existed disputed issues of material fact, but did not contradict Elmwood's claim regarding the arrival of the Acknowledgment Form. See ___ Plaintiff's Memorandum in Support of its Opposition to Defendant's Motion for Partial Summary Judgment at 4-10. Furthermore, in its appellate brief, Ionics does not argue that the time of arrival of the Acknowledgment Form is in dispute. Ionics repeats language from the district court's summary judgment ruling that "with each shipment of thermostats, Elmwood included an Acknowledgment Form," Appellee's Brief at 7, but does not argue that the issue is in dispute or confront the language in Elmwood's brief which states that "[i]t is undisputed that for each of the three orders, Ionics received the Acknowledgment prior to receiving the shipment of thermostats." Appellant's Brief at 6. As we have noted, the Acknowledgment Form expressed Elmwood's willingness to sell thermostats on "terms and conditions" that the Form indicated were listed on the reverse -5- side. Among the terms and conditions listed on the back was the following: 9. WARRANTY All goods manufactured by Elmwood Sensors, Inc. are guaranteed to be free of defects in material and workmanship for a period of ninety (90) days after receipt of such goods by Buyer or eighteen months from the date of manufacturer [sic] (as evidenced by the manufacturer's date code), whichever shall be longer. THERE IS NO IMPLIED WARRANTY OF MERCHANTABILITY AND NO OTHER WARRANTY, EXPRESSED OR IMPLIED, EXCEPT SUCH AS IS EXPRESSLY SET FORTH HEREIN. SELLER WILL NOT BE LIABLE FOR ANY GENERAL, CONSEQUENTIAL OR INCIDENTAL DAMAGES, INCLUDING WITHOUT LIMITATION ANY DAMAGES FROM LOSS OF PROFITS, FROM ANY BREACH OF WARRANTY OR FOR NEGLIGENCE, SELLER'S LIABILITY AND BUYER'S EXCLUSIVE REMEDY BEING EXPRESSLY LIMITED TO THE REPAIR OF DEFECTIVE GOODS F.O.B. THE SHIPPING POINT INDICATED ON THE FACE HEREOF OR THE REPAYMENT OF THE PURCHASE PRICE UPON THE RETURN OF THE GOODS OR THE GRANTING OF A REASONABLE ALLOWANCE ON ACCOUNT OF ANY DEFECTS, AS SELLER MAY ELECT. Neither party disputes that they entered into a valid contract and neither disputes the quantity of thermostats purchased, the price paid, or the manner and time of delivery. The only issue in dispute is the extent of Elmwood's liability. In summary, Ionics' order included language stating that the contract would be governed exclusively by the terms included on the purchase order and that all remedies available under state law would be available to Ionics. In a subsequent letter, Ionics added that Elmwood must indicate any objections to these conditions in writing. Elmwood, in turn, sent Ionics an -6- Acknowledgment stating that the contract was governed exclusively by the terms in the Acknowledgment, and Ionics was given ten days to reject this "counteroffer." Among the terms included in the Acknowledgment is a limitation on Elmwood's liability. As the district court stated, "the terms are diametrically opposed to each other on the issue of whether all warranties implied by law were reserved or waived." Order of the District Court, August 23, 1995. We face, therefore, a battle of the forms. This is purely a question of law. The dispute turns on whether the contract is governed by the language after the comma in 2- 207(1) of the Uniform Commercial Code, according to the rule laid down by this court in Roto-Lith, Ltd. v. F.P. Bartlett & Co., 297 _______________ ___________________ F.2d 497 (1st Cir. 1962), or whether it is governed by subsection (3) of the Code provision, as enacted by both Massachusetts, Mass. Gen. L. ch. 106, 2-207 (1990 and 1996 Supp.), and Rhode Island, R.I. Gen. Laws 6A-2-207 (1992).2 We find the rule of Roto-Lith to be in conflict with the purposes of section 2-207 _________ and, accordingly, we overrule Roto-Lith and find that subsection _________ (3) governs the contract.3 Analyzing the case under section 2-  ____________________ There is some uncertainty on the question of whether Massachusetts or Rhode Island law governs. We need not address this issue, however, because the two states have adopted versions of section 2-207 of the Uniform Commercial Code that are virtually equivalent. Although panel decisions of this court are ordinarily binding on newly constituted panels, that rule does not obtain in instances where, as here, a departure is compelled by controlling authority (such as the interpreted statute itself). In such relatively rare instances, we have sometimes chosen to circulate -7- 207, we conclude that Ionics defeats Elmwood's motion for partial summary judgment. III. Legal Analysis III. Legal Analysis Our analysis begins with the statute. Section 2-207 reads as follows: 2-207. Additional Terms in Acceptance or Confirmation (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms. (2) The additional or different terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless: (a) the offer expressly limits acceptance to the terms of the offer; (b) they materially alter it; or (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.  (3) Conduct by both parties which recognizes the existence of a contract is  ____________________ the proposed overruling opinion to all active members of the court prior to publication even though the need to overrule precedent is reasonably clear. See, e.g., Wright v. Park, 5 F.3d ___ ____ ______ ____ 586, 591 n.7 (1st Cir. 1994); Trailer Marine Transport Corp. v. _______________________________ Rivera V zquez, 977 F.2d 1, 9 n.5 (1st Cir. 1992). This _______________ procedure is, of course, informal, and does not preclude a suggestion of rehearing en banc on any issue. We have followed that praxis here and can report that none of the active judges of this court has objected to the panel's analysis or to its conclusion that Roto-Lith has outlived its usefulness as circuit _________ precedent. -8- sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this chapter. Mass. Gen. L. ch. 106, 2-207 (1990 and 1996 Supp.). In Roto-Lith, Roto-Lith sent a purchase order to _________ Bartlett, who responded with an acknowledgment that included language purporting to limit Bartlett's liability. Roto-Lith did not object. Roto-Lith, 297 F.2d at 498-99. This court held that _________ "a response which states a condition materially altering the obligation solely to the disadvantage of the offeror is an 'acceptance * * * expressly * * * conditional on assent to the additional * * * terms.'" Id. at 500. This holding took the ___ case outside of section 2-207 by applying the exception after the comma in subsection (1). The court then reverted to common law and concluded that Roto-Lith "accepted the goods with knowledge of the conditions specified in the acknowledgment [and thereby] became bound." Id. at 500. In other words, the Roto-Lith court ___ _________ concluded that the defendant's acceptance was conditional on assent, by the buyer, to the new terms and, therefore, constituted a counter offer rather than an acceptance. When Roto-Lith accepted the goods with knowledge of Bartlett's conditions, it accepted the counteroffer and Bartlett's terms governed the contract. Elmwood argues that Roto-Lith governs the _________ -9- instant appeal, implying that the terms of Elmwood's acknowledgment govern. Ionics claims that the instant case is distinguishable because in Roto-Lith "the seller's language limiting warranties _________ implied at law was proposed as an addition to, but was not in conflict with, the explicit terms of the buyer's form. [In the instant case] the explicit terms of the parties' forms conflict with and reject each other." Appellee's Brief at 21. We do not believe that Ionics' position sufficiently distinguishes Roto-Lith. It would be artificial to enforce _________ language that conflicts with background legal rules while refusing to enforce language that conflicts with the express terms of the contract. Every contract is assumed to incorporate the existing legal norms that are in place. It is not required that every contract explicitly spell out the governing law of the jurisdiction. Allowing later forms to govern with respect to deviations from the background rules but not deviations from the terms in the contract would imply that only the terms in the contract could be relied upon. Aside from being an artificial and arbitrary distinction, such a standard would, no doubt, lead parties to include more of the background rules in their initial forms, making forms longer and more complicated. Longer forms would be more difficult and time consuming to read -- implying that even fewer forms would be read than under the existing rules. It is the failure of firms to read their forms that has -10- brought this case before us, and we do not wish to engender more of this type of litigation. Our inquiry, however, is not complete. Having found that we cannot distinguish this case from Roto-Lith, we turn to _________ the Uniform Commercial Code, quoted above. A plain language reading of section 2-207 suggests that subsection (3) governs the instant case. Ionics sent an initial offer to which Elmwood responded with its "Acknowledgment." Thereafter, the conduct of the parties established the existence of a contract as required by section 2-207(3). Furthermore, the case before us is squarely addressed in comment 6, which states: 6. If no answer is received within a reasonable time after additional terms are proposed, it is both fair and commercially sound to assume that their inclusion has been assented to. Where clauses on confirming forms sent by both parties conflict[,] each party must be assumed to object to a clause of the other conflicting with one on the confirmation sent by himself. As a result[,] the requirement that there be notice of objection which is found in subsection (2) [of 2-207] is satisfied and the conflicting terms do not become part of the contract. The contract then consists of the terms originally expressly agreed to, terms on which the confirmations agree, and terms supplied by this Act. Mass. Gen. L. ch. 106, 2-207, Uniform Commercial Code Comment 6. This Comment addresses precisely the facts of the instant case. Any attempt at distinguishing the case before us from section 2-207 strikes us as disingenuous. -11- We are faced, therefore, with a contradiction between a clear precedent of this court, Roto-Lith, which suggests that the _________ language after the comma in subsection (1) governs, and the clear dictates of the Uniform Commercial Code, which indicate that subsection (3) governs. It is our view that the two cannot co- exist and the case at bar offers a graphic illustration of the conflict. We have, therefore, no choice but to overrule our previous decision in Roto-Lith, Ltd. v. F.P. Bartlett & Co., 297 _______________ ___________________ F.2d 497 (1st Cir. 1962). Our decision brings this circuit in line with the majority view on the subject and puts to rest a case that has provoked considerable criticism from courts and commentators and alike.4 We hold, consistent with section 2-207 and Official Comment 6, that where the terms in two forms are contradictory, each party is assumed to object to the other party's conflicting clause. As a result, mere acceptance of the goods by the buyer is insufficient to infer consent to the seller's terms under the language of subsection (1).5 Nor do such terms become part of  ____________________ See, e.g., Step-Saver Data Systems, Inc. v. Wyse Technology, ___ ____ ______________________________ _______________ 939 F.2d 91, 101 (3d Cir. 1991); St. Charles Cable TV, Inc. v. ___________________________ Eagle Comtronics, Inc., 687 F. Supp. 820, 828 & n.19 (S.D.N.Y. _______________________ 1988); Daitom v. Pennwalt Corp., 741 F.2d 1569, 1576-77 (10th _______ ______________ Cir. 1984); Luria Bros. v. Pietlet Bros. Scrap Iron & Metal, 600 ___________ _________________________________ F.2d 103, 113 (7th Cir. 1979); Dorton v. Collins & Aikman Corp., ______ ______________________ 453 F.2d 1161, 1168 & n.5 (6th Cir. 1972); ; James J. White & Robert S. Summers, 1 Uniform Commercial Code, 1-3, at 12, 16-17 (1995); Murray, Intention over Terms: An Exploration of UCC 2-207 & New Section 60, Restatement of Contracts, 37 Fordham L. Rev. 317, 329 (1969). See also Official Comment 3 ("If [additional or different _________ terms] are such as materially to alter the original bargain, they will not be included unless expressly agreed to by the other -12- the contract under subsection (2) because notification of objection has been given by the conflicting forms. See 2- ___ 207(2)(c). The alternative result, advocated by Elmwood and consistent with Roto-Lith, would undermine the role of section 2- _________ 207. Elmwood suggests that "a seller's expressly conditional acknowledgment constitutes a counteroffer where it materially alters the terms proposed by the buyer, and the seller's terms govern the contract between the parties when the buyer accepts and pays for the goods." Appellant's Brief at 12. Under this view, section 2-207 would no longer apply to cases in which forms have been exchanged and subsequent disputes reveal that the forms are contradictory. That is, the last form would always govern. The purpose of section 2-207, as stated in Roto-Lith, _________ "was to modify the strict principle that a response not precisely in accordance with the offer was a rejection and a counteroffer." Roto-Lith, 297 F.2d at 500; see also Dorton v. Collins & Aikman _________ _________ ______ ________________ Corp., 453 F.2d 1161, 1165-66 (6th Cir. 1972) (stating that _____ section 2-207 "was intended to alter the 'ribbon-matching' or 'mirror' rule of common law, under which the terms of an acceptance or confirmation were required to be identical to the terms of the offer"). Under the holding advocated by Elmwood, virtually any response that added to or altered the terms of the offer would be a rejection and a counteroffer. We do not think  ____________________ party."). -13- that such a result is consistent with the intent of section 2-207 and we believe it to be expressly contradicted by Comment 6. Applied to this case, our holding leads to the conclusion that the contract is governed by section 2-207(3). Section 2-207(1) is inapplicable because Elmwood's acknowledgment is conditional on assent to the additional terms. The additional terms do not become a part of the contract under section 2-207(2) because notification of objection to conflicting terms was given on the order form and because the new terms materially alter those in the offer. Finally, the conduct of the parties demonstrates the existence of a contract, as required by section 2-207(3). Thus, section 2-207(3) applies and the terms of the contract are to be determined in accordance with that subsection. We conclude, therefore, that section 2-207(3) prevails and "the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this chapter." Mass. Gen. L. ch. 106, 2-207(3). The reality of modern commercial dealings, as this case demonstrates, is that not all participants read their forms. See ___ James J. White & Robert S. Summers, Uniform Commercial Code 1-3 _______________________ at 6-7 (4th ed. 1995). To uphold Elmwood's view would not only fly in the face of Official Comment 6 to section 2-207 of the Uniform Commercial Code, and the overall purpose of that section, it would also fly in the face of good sense. The sender of the last form (in the instant case, the seller) could insert -14- virtually any conditions it chooses into the contract, including conditions contrary to those in the initial form. The final form, therefore, would give its sender the power to re-write the contract. Under our holding today, we at least ensure that a party will not be held to terms that are directly contrary to the terms it has included in its own form. Rather than assuming that a failure to object to the offeree's conflicting terms indicates offeror's assent to those terms, we shall make the more reasonable inference that each party continues to object to the other's contradictory terms. We think it too much to grant the second form the power to contradict and override the terms in the first form. -15- IV. Conclusion IV. Conclusion For the reasons stated herein, the district court's order denying Elmwood's motion for partial summary judgment is affirmed and the case is remanded to the district court for affirmed remanded  ________ ________ further proceedings. -16-