STANLEY–BOSTITCH, INC.

v.

REGENERATIVE ENVIRONMENTAL
EQUIPMENT CO., INC., et al.

No. 95–462–Appeal.

Supreme Court of Rhode Island.

June 30, 1997.

Richard W. MacAdams, Providence, for Plaintiff.

Douglas A. Giron, Cranston, for Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

WEISBERGER, Chief Justice.

This case comes before us on appeal by Stanley–Bostitch, Inc. (plaintiff or SBI), from a grant of summary judgment entered in Superior Court in favor of James Mueller (defendant) compelling the plaintiff to arbitrate in New Jersey disputes arising out of the purchase and sale of environmental equipment. The issue presented is whether a clearly written and expressed agreement to arbitrate exists between the parties. We conclude that there is not, and for the reasons set forth below, we vacate the judgment of the Superior Court. The undisputed facts surrounding this appeal are as follows.

On August 7, 1987, Regenerative Environmental Equipment Company, Inc. (REECO), sent plaintiff a proposal to engineer, fabricate, and install a re-therm thermal-oxidation system (the re-therm system) for its manufacturing plant in East Greenwich, Rhode Island. The proposal comprised several pages. One page, entitled "Price Quotation," set forth the costs of two different models of re-therm units. The reverse side of that page embodied boilerplate provisions in fine print delineating the terms and conditions of sale. One provision required that controversies arising out of or relating to the sale of the re-therm system "shall be settled by arbitration in the City of Morristown, County of Morris, New Jersey in accordance with the rules and procedures * * * of the American Arbitration Association." The subsequent paragraph stated that the agreement shall be governed by and construed under the laws of the State of New Jersey. The following page contained a price-adjustment clause. By its own terms the August 7 proposal expired if not accepted by plaintiff within sixty days.

On August 11, 1987, REECO sent plaintiff a quotation for the cost of engineering services relating to one of the two re-therm models described in REECO's August 7 pro-

posal. The next day plaintiff sent REECO a purchase order in the amount of $64,000 for "engineering services only." The reverse side of the order listed the terms and conditions of sale, including a provision entitled "Governing Law." That provision directed that any contract resulting from the purchase order would be construed according to the law of the State of Rhode Island and that any controversy arising thereunder would be determined, at the buyer's option, by the courts of the State of Rhode Island.

In response, REECO sent plaintiff a letter acknowledging its purchase of "engineering services only." The letter, dated August 18, 1987, also instructed plaintiff that the terms written on the reverse side of its August 7 quotation page would apply to the sale rather than the terms and conditions specified on the reverse side of plaintiff's August 12 purchase order. Then REECO asked plaintiff to sign and return the confirmation letter. On August 28, 1987, an authorized agent of plaintiff accepted and signed REECO's letter.

On November 9, 1987, plaintiff sent REECO a purchase order in the amount of $1,094,000 for the re-therm system "as described on [REECO's August 7 proposal]." The purchase order referred the seller to the reverse side of the form for "additional terms and conditions of purchase." The terms of the sale, like those in plaintiff's previous order, specified that any resulting contract shall be construed according to the laws of the State of Rhode Island and that any controversy arising thereunder would be determined, at the buyer's option, by the courts of the State of Rhode Island.[1]

As before, REECO sent plaintiff a letter confirming plaintiff's purchase. That letter, dated December 1, 1987, stated in pertinent part:

"[I]n lieu of the 'TERMS' noted on the reverse side of your purchase order, please

---

1. Specifically the provision stated:
     "GOVERNING LAW: The contract resulting from this order is to be construed according to the laws of the state from which this order issues, as shown by the address of Buyer printed on the face of this order. The parties agree that any controversy arising under

this order shall, at Buyer's option, be determined by the courts of the state from which this order is issued as aforesaid, and Seller hereby submits and consents to the jurisdiction of the courts of said state."
   The address on the face of SBI's purchase order was East Greenwich, Rhode Island.

refer to the 'TERMS AND CONDITIONS OF SALE' on the reverse side of the price quotation page of our [August 7] proposal. Although the intent is similar, we believe those noted in our proposal to be more applicable to the nature of the equipment to be supplied under this order and will, therefore, apply."

The letter then instructed plaintiff to sign and return a copy of the document. The plaintiff, however, did not sign or return the document. Subsequently REECO fabricated the re-therm system and in May of 1988 began shipping the equipment to plaintiff's East Greenwich facility. The plaintiff, in turn, paid REECO $1,094,000.

In May of 1989, REECO sent plaintiff an invoice in the amount of $99,266 for additional compensation allegedly owed it pursuant to the price-adjustment clause contained in its August 7 proposal. The plaintiff refused to pay the sum, contending that the proposal's price-adjustment clause never became part of the contract between the parties.

Subsequently REECO assigned its remaining rights and interest in the contract to James Mueller (Mueller or defendant). On May 27, 1992, Mueller filed a demand for arbitration in the State of New Jersey on the basis of the arbitration clause written on the reverse of REECO's August 7 quotation page. In response SBI filed suit in Superior Court, seeking injunctive relief and a declaration that the price-adjustment dispute is not arbitrable. In conjunction therewith, SBI asked the court to determine whether any sum is owed Mueller under the contract.

The parties filed cross-motions for summary judgment. Following a hearing on the matter the trial justice concluded that the provision to arbitrate contained on the reverse of REECO's August 7 quotation page was clearly expressed. The provision, the trial justice determined, was incorporated by reference into REECO's letter of confirmation dated December 1, 1987. The trial justice reasoned that pursuant to G.L.1956 § 6A–2–207 of the Rhode Island Uniform Commercial Code the arbitration provision

became part of the contract between the parties when SBI failed to respond to REECO's confirmation letter. Accordingly the trial justice entered summary judgment in favor of defendant. The plaintiff appealed that judgment to this court.[2]

On appeal, SBI contends that no clearly written and expressed agreement to arbitrate exists between the parties as mandated by G.L.1956 § 10–3–2. It also claims that under the Rhode Island Uniform Commercial Code, the provision to arbitrate was an additional and conflicting term that never became part of the contract.

I

### Is the Arbitration Provision a Part of the Agreement between the Parties?

▮ In reviewing the propriety of an order granting summary judgment, this court, like the trial court, must examine the pleadings and other submitted material in a light most favorable to the party opposing the motion. The moving party is entitled to judgment as a matter of law only if there are no genuine issues of material fact to be decided. Super. R. Civ. P. 56; *O'Hara v. John Hancock Mutual Life Insurance Co.*, 574 A.2d 135, 136 (R.I.1990). In the present case both parties agree that SBI and REECO contracted for the purchase and sale of environmental equipment. They disagree, however, about whether the ensuing contract included a binding-arbitration provision. Whether a party has agreed to be bound by arbitration is a question of law subject to this court's de novo review. *Providence Teachers' Union v. Providence School Committee*, 433 A.2d 202, 205 (R.I.1981).

We begin our analysis of the issue with a brief review of the historical treatment of arbitration agreements in this jurisdiction. This court has previously noted the efficacy of arbitration as an alternate method of dispute resolution. *See Pepin v. American Universal Insurance Co.*, 540 A.2d 21, 22 (R.I.1988); *Soprano v. American Hardware Mutual Insurance Co.*, 491 A.2d 1008, 1011

---

**2.** On July 20, 1995, the Superior Court granted SBI a stay of enforcement of its judgment pending appeal.

(R.I.1985). At common law, however, such agreements were unenforceable because of the prevailing belief that they operated to deprive parties of their right to seek recourse in the courts. *Donahue v. Associated Indemnity Corp.*, 101 R.I. 741, 745, 227 A.2d 187, 189 (1967); *Pepin v. Societe St. Jean Baptiste*, 23 R.I. 81, 82–84, 49 A. 387, 388 (1901). The Legislature created a statutory right to binding arbitration, however, when it enacted G.L.1956, chapter 3 of title 10, the Rhode Island Arbitration Act (the act). *See Pepin v. American Universal Insurance Co.*, 540 A.2d at 22. However, under early versions of the act enforcement of a provision to arbitrate turned upon its proper placement within a contract, *see, e.g., Calore Rigging Corp. v. Sterling Engineering & Construction Co.*, 106 R.I. 290, 292, 259 A.2d 123, 124 (1969); *Donahue*, 101 R.I. at 745–47, 227 A.2d at 189–90, rather than on the parties' intent to submit subsequent controversies to arbitration, *see, e.g., A.C. Beals Co. v. Rhode Island Hospital*, 110 R.I. 275, 284, 292 A.2d 865, 870 (1972).

The most recent amendment to § 10-3-2 of the act eliminated this requirement for most contracts but conspicuously left unaffected the statutory mandate that agreements to arbitrate be "clearly written and expressed."[3] General Laws 1956 § 10-3-2, as amended by P.L.1976, ch. 342, § 1. Indeed, this court has specifically stated that "[n]o one is under a duty to arbitrate unless with clear language he [or she] has agreed to do so." *Bush v. Nationwide Mutual Insurance Co.*, 448 A.2d 782, 784 (R.I.1982). The Supreme Court has held, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to sub-mit." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409, 1417 (1960); *see also McCarthy v. Azure*, 22 F.3d 351, 355 (1st Cir.1994) ("a person may, by contract, waive his or her right to adjudication, * * * [but] there can be no waiver in the absence of an agreement signifying an assent").[4]

In order to determine whether the parties agreed to substitute arbitration for adjudication, we must examine the documents comprising the contract between the parties for evidence of mutual assent. *McCarthy*, 22 F.3d at 355, 1 Restatement (Second) *Contracts* § 17 (1981). Mutual assent objectively manifested by the writings of the parties is a condition precedent to the formation of a binding agreement to arbitrate. *See, e.g., Bush* at 784; *cf. Smith v. Boyd*, 553 A.2d 131, 133 (R.I.1989) (assent required for a contract to be valid); *J. Koury Steel Erectors, Inc. of Mass. v. San–Vel Concrete Corp.*, 120 R.I. 360, 364–65, 387 A.2d 694, 697 (1978) (same); 1 Restatement (Second) *Contracts* at § 17 (same).

The defendant contends that the contract in its final form consisted of REECO's August 7 proposal, SBI's November 9 purchase order, and REECO's December 1 confirmation letter. He argues that REECO's August 7 proposal contained a clearly written and expressed arbitration provision. The defendant claims that the December 1 confirmation letter made REECO's acceptance of the contract expressly conditional on SBI's assent to the terms of the proposal; SBI assented to these terms, defendant contends,

---

3. Specifically G.L.1956 § 10-3-2, as amended by P.L.1976, ch. 342, § 1 provides in pertinent part: "When clearly written and expressed, a provision in a written contract to settle by arbitration a controversy thereafter arising out of such contract, or out of the refusal to perform the whole or any part thereof, or an agreement in writing between two (2) or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract * * *."

4. In this regard we have considered the potential relevance of the Federal Arbitration Act to the subject transaction and have carefully analyzed the Supreme Court's decision in *Doctor's Associates, Inc. v. Casarotto*, —— U.S. ——, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). However, because we decide the present case under general principles of contract law and the Rhode Island Uniform Commercial Code, we find the Court's decision in *Casarotto* not applicable to this controversy.

when it took delivery of and paid for the retherm system. We do not agree.

The defendant confuses a clear expression of intent to arbitrate on the part of REECO with a clearly expressed agreement to arbitrate mutually assented to by both parties to the contract. We are of the opinion that nothing in the record supports a finding that SBI expressed an intent, either implicitly or explicitly, to be bound by the arbitration provision contained in REECO's August 7 proposal. On the contrary, the terms contained in REECO's August 7 proposal directly conflicted with those embodied in SBI's November 9 purchase order. Unlike the parties' previous transaction, SBI did not sign or return the confirmation letter that purported to incorporate the terms of REECO's August 7 proposal. The retention of the confirmation letter by SBI, without more, is not sufficient to satisfy the requirement of an express and unequivocal agreement to arbitrate. *See Bush,* 448 A.2d at 784.

## II

### Does the Rhode Island Uniform Commercial Code Compel a Different Result?

The defendant also contends that § 6A–2–207 of the Rhode Island Uniform Commercial Code compels us to conclude that the parties' contract encompasses an agreement to arbitrate. In conjunction therewith defendant claims that REECO's December 1 confirmation letter was accepted by SBI when it did not object to the letter and when it then took receipt of and paid for the ordered equipment. In support of his position defendant directs us to subsection (1) of § 6A–2–207 and the decisions *Providence & Worcester Railroad Co. v. Sargent & Greenleaf, Inc.,* 802 F.Supp. 680 (D.R.I.1992), and *Roto–Lith, Ltd. v. F.P. Bartlett & Co.,* 297 F.2d 497 (1st Cir.1962).

Section 6A–2–207 provides in pertinent part:

"(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

"(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

(a) The offer expressly limits acceptance to the terms of the offer;

(b) They materially alter it; or

(c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

"(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of title 6A."

Subsection (1) to § 6A–2–207 was intended to alter the common-law mirror-image rule, wherein "the terms of an acceptance or a confirmation were required to be identical to the terms of the offer." *Dorton v. Collins & Aikman Corp.,* 453 F.2d 1161, 1165 (6th Cir. 1972). A common-law acceptance that varied the terms of an offer was considered a counteroffer and operated as a rejection of the original offer. *Id.* at 1166; *see also Ardente v. Horan,* 117 R.I. 254, 259–60, 366 A.2d 162, 165 (1976). If the offeror proceeded with the transaction after receiving the counteroffer, his performance was considered acceptance of the terms of the counteroffer. *Dorton,* 453 F.2d at 1166. Under § 6A–2–207, however, that result is different. Section 6A–2–207 recognizes that the terms of an offer and those of the acceptance are seldom identical. In such cases a contract is recognized notwithstanding the additional or different terms if the offeree's intent to accept is definitely expressed and if the offeree's acceptance is not expressly conditioned on the offeror's assent to the additional or different terms. *See* § 6A–2–207(1).

Once a contract is recognized under § 6A–2–207 subsection (1), subsection (2) must be consulted to determine whether the addition-

al terms become part of the agreement between the parties. Under subsection (2) the new terms are treated as "proposals for addition to the contract" unless the contracting parties are merchants. If the contracting parties are merchants, the additional terms become part of the contract unless (1) "the offer expressly limits acceptance to the terms of the offer," (2) the terms are objected to, or (3) the terms materially alter the agreement between the parties. Section 6A–2–207(2).

When a contract is not recognized under subsection (1) because, for example, acceptance is expressly conditioned on the offeror's assent to the additional or different terms, the transaction terminates. If, however, the parties proceed as if they have an agreement, their performance results in the formation of a contract. The terms of the contract are those on which the parties' forms agree with any missing terms supplied by the UCC. In regard to those terms in which the parties' forms are in conflict, "each party must be assumed to object to a clause of the other * * * and the conflicting terms do not become a part of the contract." Official Comment to § 6A–2–207, par. 6.

■ In this case the December 1 confirmation letter did not *expressly* condition REECO's acceptance of SBI's purchase order on SBI's *assent* to the provisions of the August 7 proposal. The confirmation letter by REECO stated in pertinent part:

"We have received and thank you for your above referenced purchase order.

"In accordance with our proposal * * * dated 8/7/87, we will furnish the following equipment and services for your East Greenwich, Rhode Island facility. * * *

"As previously agreed (Ref. REECO Acknowledgment letter 08/18/87), in lieu of the 'TERMS' noted on the reverse side of your purchase order, please refer to the 'TERMS AND CONDITIONS OF SALE' on the reverse side of the price quotation page of our proposal. Although the intent is similar, we believe those noted in our proposal to be more applicable to the nature of the equipment to be supplied under this order and will, therefore, apply."

In our opinion this language falls far short of making REECO's acceptance of the contract expressly conditional on SBI's assent to the terms contained in its August 7 proposal. Indeed, in order for REECO's acceptance to be "expressly made conditional on [SBI's] assent," pursuant to § 6A–2–207(1), REECO was required to make clear that it was unwilling to proceed with the transaction unless SBI assented to the terms contained in its proposal. *See, e.g., Taft–Peirce Manufacturing Co. v. Seagate Technology, Inc.,* 789 F.Supp. 1220, 1226 (D.R.I.1992) (" 'if a party wants only his [or her] terms to apply, it must expressly make its acceptance conditional on the other party's assent to those terms' ").

Reference by REECO to its August 18 acknowledgment letter in the December 1 confirmation letter does not alter our determination. Under the parties' separate contract "for engineering services only" SBI signed REECO's August 18 acknowledgment letter, thereby assenting to the terms and conditions of the August 7 proposal including the term providing for binding arbitration. Under the present contract, however, SBI never signed or returned REECO's confirmation letter. Hence it never assented to the arbitration provision purportedly incorporated therein.

We also find defendant's reliance on *Providence & Worcester Railroad Co. v. Sargent & Greenleaf, Inc.,* 802 F.Supp. 680 (D.R.I.1992), and *Roto–Lith, Ltd. v. F.P. Bartlett & Co.,* 297 F.2d 497 (1st Cir.1962), unpersuasive. Those cases are not based upon similar factual contexts and do not involve arbitration provisions. Further, the First Circuit Court of Appeals recently overruled *Roto–Lith* in *Ionics, Inc. v. Elmwood Sensors, Inc.,* 110 F.3d 184 (1st Cir.1997). In *Ionics* the terms of the buyer's purchase order directly conflicted with the terms in the seller's acknowledgment form in respect to whether all warranties implied by law were reserved or waived by the buyer. *Id.* at 187. Unable to distinguish *Roto–Lith* from the facts in *Ionics,* the court held that when the terms in the sales forms conflict, each party is assumed to object to the other party's clauses, and the mere acceptance of the goods by the buyer is insufficient to infer consent to the other's

terms. *Id.* at 188–89. Under such circumstances the conflicting terms do not become part of the contract. *Id.* at 189. In so holding, the court specifically found *Roto-Lith* in conflict with the purpose of § 2–207 (Mass.). *Id.* (The Massachusetts provision is virtually identical to G.L.1956 § 6A–2–207. 110 F.3d at 187 n. 2.)

*Providence & Worcester* is also not applicable to the present case because both litigants there agreed that the defendant's acknowledgment letter was "'expressly made conditional on assent'" to the additional terms. 802 F.Supp. at 685. In contrast we have determined that REECO's confirmation letter was not expressly made conditional on SBI's assent to the additional and different terms contained in the August 7 proposal.

 In our opinion REECO's confirmation letter operated as an acceptance of SBI's November 9 purchase order within the meaning of § 6A–2–207(1). We must, therefore, determine whether under § 6A–2–207(2) the additional or different terms become part of the agreement between the parties.[5] Because SBI and REECO are merchants, new terms become part of the contract between the parties unless objected to or unless they materially alter the terms of the bargain. We are of the opinion that a provision compelling a party to submit to binding arbitration materially alters the terms of the parties' agreement. *See Diskin v. J.P. Stevens & Co., Inc.,* 836 F.2d 47, 50–51 (1st Cir.1987) (citing *Matter of Marlene Industries Corp. v. Carnac Textiles, Inc.,* 45 N.Y.2d 327, 408 N.Y.S.2d 410, 413–14, 380 N.E.2d 239, 242 (1978)). Additional terms that "are such as materially to alter the original bargain * * * will not be included unless expressly agreed

to by the other party" to the contract. Official Comments to § 6A–2–207, par. 3; *see Bush,* 448 A.2d at 784. In this instance SBI never expressly agreed to the arbitration provision purportedly incorporated into REECO's December 1 confirmation letter.[6]

Having determined that no agreement to arbitrate exists between the parties, we conclude that Mueller, as an assignee of the contract between SBI and REECO, cannot compel the plaintiff to submit to arbitration. Accordingly, the plaintiff's appeal is sustained. We vacate the judgment of the Superior Court and remand the case for further proceedings consistent with this opinion.

GOLDBERG, J., did not participate.

---

5. The August 7 proposal by REECO expired by its own terms within sixty days of its issuance and contained price quotations for two different rc-therm units. The proposal was not an offer plaintiff accepted by sending its November 9 purchase order. The plaintiff's November 9 purchase order sought to purchase one of the two rc-therm units described in REECO's August 7 proposal, and REECO's December 1 confirmation letter accepted plaintiff's November 9 purchase order and purported to incorporate additional and different terms into the agreement.

6. The defendant's reliance on G.L.1956 § 6A–2–201(2) is utterly without merit. Section 6A–2–

201(2) of the code pertains to the statute of frauds and provides that between merchants failure to answer a written confirmation of an oral contract for the sale of goods worth $500 or more within ten days of its receipt takes away from that party the defense of the statute of frauds. Section 6A–2–201(2) is not determinative of what terms comprise a written contract. The defendant's reliance on § 6A–2–204 is similarly misplaced. That section applies to circumstances when the conduct of the parties recognizes the existence of a contract even though the writings of the parties do not. In this instance the parties' writings are sufficient to form a contract.