**A.T. CROSS CO., Plaintiff,**

v.

**ROYAL SELANGOR(S) PTE, LTD., Defendant.**

**C.A. 01–625 L.**

United States District Court, D. Rhode Island.

Sept. 3, 2002.

230

Robin Lee Main, Esq., Holland & Knight LLP, Providence, RI, John F. Sylvia, Esq., William M. Cowan, Esq., Mintz, Levin, Cohn, Feerris, Glovsky & Popeo, Boston, MA, for Plaintiff.

George E. Lieberman, Esq., Tillinghast Licht Perkins Smith & Cohen, Providence, RI, Timothy N. Tanner, Esq., John Michael Linsenmeyer, Esq., Robert N. Hornick, Esq., Morgan Lewis Bockius, New York City, for Defendant.

## OPINION AND ORDER

LAGUEUX, Senior District Judge.

The matter presently before the Court is plaintiff's motion to stay an arbitration proceeding. Plaintiff, A.T. Cross. Co. ("A. T. Cross"), has filed suit seeking a declaratory judgment that it is not subject to arbitration proceedings initiated by defendant, Royal Selangor(s) PTE, Ltd. ("Royal Selangor"). Plaintiff contends that the arbitration clause in the alleged contract was never agreed to by the parties and therefore is not enforceable. Defendant objects to the motion to stay arbitration, contending that it is the role of the arbitrator, and not the Court, to determine an arbitrator's jurisdiction and that the arbitration clause is valid. This Court grants plaintiff's motion to stay arbitration proceedings. The issues that the Court must consider in the motion to stay are identical to the issues that the Court would have to consider to resolve the underlying declaratory judgment action. Therefore, this Court, after reviewing the motion and supporting affidavits, declares that A.T. Cross is not subject to the arbitration proceedings initiated by defendant.

## I. UNDISPUTED FACTS

The following facts are set forth in the sworn affidavits and accompanying documents certified to be true and accurate supporting and opposing the motion for a stay. A.T. Cross makes writing instruments. Royal Selangor distributes products in Asia, and had, until 1998, an agreement to distribute plaintiff's products in Australia. In an August 12, 1998 letter, A.T. Cross notified Royal Selangor that it would not renew the distribution agreement with Royal Selangor for Australia. In the same letter, A.T. Cross stated that it was prepared to offer Royal Selangor a five year contract "subject to the usual terms and conditions."

On August 25, 1998, Royal Selangor responded in writing to A.T. Cross's letter, stating that it would accept the offer of a five year contract subject to the terms and agreements being mutually agreeable. On September 14, 1998, A.T. Cross forwarded a draft agreement to Royal Selangor. Royal Selangor marked up the draft agreement with changes, including a proposed extension of the five year term to a seven year term. The draft agreement contained an arbitration clause, paragraph 20, stating that "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in Providence, Rhode Island, United States of America, in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The language of arbitration shall be English." On September 17, 1998, the parties met to negotiate the draft agreement and tabled numerous issues for clarification and approval. On September 18, 1998, Royal Selangor sent A.T. Cross by e-mail the minutes from the prior day's negotiations. Among sixteen other issues left unresolved, Royal Selangor sought to modify the choice of law clause (clause 19) and the arbitration clause (clause 20). De-

fendant proposed changing the choice of law from Rhode Island to the Republic of Singapore and changing the arbitration location from Rhode Island to the Republic of Singapore. In a September 18, 1998 letter from A.T. Cross to Royal Selangor, A.T. Cross states that it has appointed Royal Selangor as its distributor for Singapore, Malaysia, and Indonesia, "subject to agreement of the terms and conditions presented in the Distributor Contract." On September 21, 1998, Royal Selangor faxed A.T. Cross a short statement: "Thank you for your fax dated 18/9/98 confirming our appointment for SMI."

According to the affidavit of Yong Poh Shin ("Yong"), the Managing Director for Royal Selangor, shortly after the September 21, 1998 fax, A.T. Cross presented a second draft agreement to Royal Selangor. Yong Aff. at ¶ 12. Neither party signed the second draft agreement. The arbitration clause in the second draft, now clause 21, remained identical to the clause in the first draft and provided that the location of arbitration would be in Providence, Rhode Island. The affidavit of Gail Tighe ("Tighe"), Assistant General Counsel for A.T.X. International Inc., a subsidiary of A.T. Cross, states that the parties were unable to reach a written agreement on the essential terms, including the arbitration clause, but A.T. Cross orally agreed to accept Royal Selangor as its interim distributor. Tighe Aff. at ¶¶ 9, 10. The affidavit of Yong states that the second draft contained terms that were acceptable to Royal Selangor, and Royal Selangor commenced its performance of the agreement. Yong Aff. at ¶ 13. On June 1, 2000, A.T. Cross notified Royal Selangor by letter that it was terminating their distribution relationship effective July 7, 2000.

In October, 2001, defendant initiated arbitration proceedings before the American Arbitration Association. Defendant claims that plaintiff wrongfully terminated its distributorship in violation of their distribution agreement. Defendant requested that the hearing locale, notwithstanding the arbitration clause, be in New York, New York and not Providence, Rhode Island. On December 27, 2001, plaintiff filed suit in this Court seeking a declaratory judgment that it was not subject to an arbitration agreement. On the same day, plaintiff moved to stay the arbitration proceedings initiated by defendant.

## II. SEVERABILITY AND ARBITRABILITY

When a contract contains an arbitration clause, ordinarily any matters in dispute should be resolved through arbitration and not by the Court. *Prima Paint Corp. v. Flood & Conklin, Mfg. Co.,* 388 U.S. 395, 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967). A dispute over the scope of the arbitration clause such as the arbitrability of a particular issue, is generally decided by the Court, unless the parties have agreed to arbitrate arbitrability. Here, the scope of the arbitration clause is not in dispute, but rather the dispute centers on whether there is a binding clause at all. The First Circuit has called this question "the mother of arbitrability questions." *MCI Telecomm. Corp. v. Exalon Indus. Inc.,* 138 F.3d 426, 429 (1st Cir. 1998).

Arbitration that relates to interstate commerce is governed by federal law, specifically 9 U.S.C. § 1 et seq. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (holding that federal law preempts state law on issues of arbitrability). In general, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or

an allegation of waiver, delay or a like defense to arbitrability." *Id.* If the parties have never formed an arbitration agreement, however, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT & T Tech., Inc. v. Communications Workers,* 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). The party seeking arbitration, therefore, must demonstrate "at a bare minimum, that the protagonists have agreed to arbitrate some claims." *McCarthy v. Azure,* 22 F.3d 351, 354–55 (1st Cir.1994). If there is no agreement to arbitrate, any disputed issues must be decided by the Court. *See id.*

 The question of whether there is a valid contract differs from whether the parties must take their dispute to arbitration. Because the arbitration clause is severable from the rest of the contract, an arbitrator can decide if a contract is invalid or unenforceable. The federal court may only decide "issues relating to the making and performance of the agreement to arbitrate." *Prima Paint,* 388 U.S. at 404, 87 S.Ct. 1801. The Court severs the arbitration clause from the rest of the contract to consider if it is binding on the parties. *See id.* For example, when a party contends that the contract was procured fraudulently, but there is no claim that fraud was involved in the arbitration agreement itself, the Court should uphold the arbitration agreement and allow arbitration to proceed. *Id.* at 406, 87 S.Ct. 1801. The First Circuit has applied the *Prima Paint* severability doctrine to contract challenges of mutual mistake and frustration of purpose. *Unionmutual Stock Life Ins. Co., v. Beneficial Life Ins. Co.,* 774 F.2d 524, 528–29 (1st Cir.1985). Since oral argument before this Court on May 1, 2002, the First

Circuit issued a decision applying the severability doctrine to a contract challenge where a party argued that the agreement had been automatically rescinded. *Large v. Conseco Fin. Ser. Corp.,* 292 F.3d 49 (1st Cir.2002).[1] In both instances, the First Circuit concluded that the arbitration clauses were severable from the contract, the legal challenges were not to the arbitration clauses, and, therefore, the arbitrator could resolve the contract challenges. *Large,* 292 F.3d at 52–56; *Unionmutual,* 774 F.2d at 528–29. Thus, even if the contract was ultimately determined to be invalid, the arbitration clause, now severed, would nevertheless be valid. The First Circuit has also held that where the parties explicitly agreed that the arbitrator would decide the issue of arbitrability, the Court could not stay the arbitration proceedings, even upon a challenge to the arbitration clause that would otherwise grant federal court jurisdiction. *Apollo Computer Inc. v. Berg,* 886 F.2d 469, 473–74 (1st Cir.1989). Therefore, barring an explicit agreement to arbitrate arbitrability, "[t]he teaching of *Prima Paint* is that a federal court must not remove from the arbitrator[ ] consideration of a substantive challenge to a contract unless there has been an independent challenge to the making of the arbitration clause itself." *Large,* 292 F.3d at 53 (quoting *Unionmutual,* 774 F.2d at 529).

 The First Circuit distinguished the facts in *Large*—where the contract had once existed but plaintiff alleged a subsequent automatic rescission—from situations where an agreement to arbitrate never existed. *Id.* at 53–54. The First Circuit endorsed the reasoning of other Circuit Courts holding that if no contract existed—or more precisely, no arbitration

---

1. This Court notes that neither plaintiff nor defendant brought the *Large* decision to the Court's attention. The decision not only discusses, in depth, *Prima Paint* and the severability doctrine, but is also binding precedent on this Court.

agreement existed—, a party could not be compelled to pursue arbitration in lieu of court proceedings. *Id.; see also Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.,* 925 F.2d 1136, 1138–142 (9th Cir.1991) (holding that *Prima Paint* was inapplicable to challenges going to the very existence of the contract); *Sandvik AB v. Advent Int'l Corp.,* 220 F.3d 99, 100–01 (3rd Cir.2000) (refusing to compel arbitration when party asserted that persons signing the agreement had no authority to do so); *Chastain v. Robinson–Humphrey Co. Inc.,* 957 F.2d 851, 855 (11th Cir.1992) ("*Prima Paint* has never been extended to require arbitrators to adjudicate a party's contention, supported by substantial evidence, that a contract *never existed at all.*").

■ Here, plaintiff A.T. Cross has asserted that an arbitration agreement never existed at all. The basis of A.T. Cross's claim is that the terms of the second draft agreement never governed the subsequent relationship of the parties. In this action, A.T. Cross is challenging the existence of the arbitration agreement. Thus, its claim falls outside of *Prima Paint*'s mandate to allow the arbitrator to decide the scope of the contract. *See Large,* 292 F.3d at 53. A.T. Cross specifically styled this action as relating only to the arbitration clause and not the validity of the second draft agreement as a whole. It does not matter, contrary to defendant's argument, that plaintiff's challenge could also apply to the existence of the entire contract. If the arbitration clause is severable so that it can be determined to be valid when the contract may not be, the arbitration clause must similarly be severable, for the purposes of pleading, when the arbitration clause may be invalid, but other terms of the alleged contract may or may not apply to the parties' relationship. *See Prima Paint,* 388 U.S. at 404, 87 S.Ct. 1801;

*Large,* 292 F.3d at 53; *Unionmutual,* 774 F.2d at 529.

■ Defendant also contends that the 1958 New York Convention, officially the Convention on Recognition and Enforcement of Foreign Arbitral Awards, mandates that this matter be referred to arbitration. The Convention is an agreement that requires United States Courts to recognize and enforce arbitral awards made outside of the United States. 9 U.S.C. § 201. The Federal Arbitration Act incorporates the Convention. *Id.* The Convention has no bearing on this case. The Convention relates to recognition of arbitral awards and not the validity of arbitration agreements. Indeed, Article V of the Convention states that the Convention does not apply when there is no valid arbitration agreement. The fact that this arbitration clause related to international commerce does not change the analysis mandated by the Supreme Court and the First Circuit. If there is no arbitration agreement, a party cannot be required to submit to arbitration. *See AT & T Tech. Inc.,* 475 U.S. at 648, 106 S.Ct. 1415; *Large,* 292 F.3d at 53. Therefore, when plaintiff contends that no arbitration agreement was reached, the Court, not an arbitrator, must determine the validity of the arbitration agreement. *See AT & T Tech. Inc.,* 475 U.S. at 648, 106 S.Ct. 1415; *Large,* 292 F.3d at 53.

## III. THE VALIDITY OF THE ARBITRATION CLAUSE

In order to rule on plaintiff's motion to stay the arbitration proceedings, this Court must determine if there is a valid arbitration agreement. Plaintiff's motion to stay is based upon the allegation that the arbitration clause is unenforceable. Because the motion to stay, in this case, requires a determination of the merits of plaintiff's claim, the Court will treat the

motion to stay as a motion for summary judgment. Both parties have supplied the Court with sworn affidavits and copies of the relevant documents outlining the facts of the case. *See* Fed.R.Civ.P. 56(e) (setting forth the documents that a court may consider on a motion for summary judgment). Additionally, at oral arguments on this motion, the Court asked the parties if it was necessary to take evidence in this matter. The parties offered no objection to deciding the issue on the papers. Therefore, so long as there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law, the Court may enter judgment on the merits of this case. *See* Fed.R.Civ.P. 56(c). As with a summary judgment motion, the Court must view all the evidence and related inferences in the light most favorable to the non-moving party. *Springfield Terminal Ry. Co. v. Canadian Pac. Ltd.,* 133 F.3d 103, 106 (1st Cir.1997).

The Federal Arbitration Act sets forth skeletal requirements for an arbitration agreement—it must be written. *See* 9 U.S.C. § 2. The Supreme Court has held that arbitration agreements are governed by principles of contract law. *See AT & T Tech. Inc.,* 475 U.S. at 648, 106 S.Ct. 1415; *see also McCarthy,* 22 F.3d at 356. Arbitration clauses fall under federal law when they touch upon interstate commerce; however, in most cases, "[w]hen deciding whether the parties agreed to arbitrate a certain matter ..., courts generally ..., should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Additionally, here, if the contract is valid, it contains a Rhode Island choice of law provision. For these reasons, the Court will look to Rhode Island law to determine if there is a valid arbitration agreement. *See id.*

For an agreement to be enforceable under contract law, the parties must evince their objective intent to be bound. *UXB Sand & Gravel, Inc. v. Rosenfeld Concrete Corp.,* 641 A.2d 75, 79 (R.I.1994). Such a showing may be made by one party making an offer, and the other party's acceptance of it. *Smith v. Boyd,* 553 A.2d 131, 133 (R.I.1989); *see also Dempsey v. George S. May Intern'l Co.,* 933 F.Supp. 72, 75 (D.Mass.1996) ("Contracts which contain mutual absolute promises to arbitrate have consistently been found to provide adequate consideration to be enforceable."). Specifically addressing the validity of arbitration agreements, the Rhode Island Supreme Court held that "[m]utual assent objectively manifested by the writings of the parties is a condition precedent to the formation of a binding agreement to arbitrate." *Stanley–Bostitch, Inc. v. Regenerative Envtl. Equip. Co., Inc.,* 697 A.2d 323, 326 (R.I. 1997). The Rhode Island General Laws provide that an arbitration clause must be "clearly written and expressed." R.I. Gen. Laws § 10–3–2. The Rhode Island Supreme Court has held that "[w]hether a party has agreed to be bound by arbitration is a question of law." *Stanley–Bostitch, Inc.,* 697 A.2d at 325. If one or both of the parties did not intend to be bound by the agreement, there is no mutuality of obligation and the agreement is unenforceable. *Id.* at 326. An example of a nonbinding agreement is a tentative statement made in contemplation of further negotiation. *See Crellin Tech. Inc. v. Equipmentlease Corp.,* 18 F.3d 1, 7–9 (1st Cir.1994).

Defendant claims that the underlying arbitration agreement was itself valid and enforceable because there was a valid contract. Defendant claims that a valid contract was created by three documents: (1) the September 18, 1998 letter from A.T. Cross to Royal Selangor that stated a dis-

tributorship relationship would begin on October 1, 1998 "subject to the agreement of terms and conditions presented in the Distributor Contract"; (2) the September 21, 1998 fax from Royal Selangor to A.T. Cross confirming its appointment; and (3) the second draft agreement. According to the affidavit of Yong, the second draft agreement was presented to Royal Selangor after the previous two letters had been transmitted. Yong Aff. at ¶ 12.

The second draft agreement was not signed by the parties. Defendant offers no written acceptance of the terms of that draft agreement. The September 18th letter indicates that the parties were in the process of on-going negotiations over the terms of the distributor relationship. The September 21st letter is not an acceptance of the terms of the second draft agreement because the agreement had not yet been forwarded. The second draft agreement is clearly marked as a draft agreement and comes after a period of negotiation where outstanding issues, such as the arbitration clause, had been set aside for later resolution. The second draft agreement, on its face, is a document created for the purposes of further negotiations. Absence evidence of acceptance of its terms, it is not a final contract. As the Rhode Island Supreme Court held in *Stanley–Bostitch*, on strikingly similar facts, "[t]he retention of the confirmation letter ..., without more, is not sufficient to satisfy the requirement of an express and unequivocal agreement to arbitrate." 697 A.2d at 327.

Defendant states that it commenced performance of the relationship and that the terms of the second draft agreement apply. Defendant, in effect, wants the Court to determine that there is an implied-in-fact contract. An implied-in-fact contract can be found when the parties' conduct and communications "evidenced mutual agreement with regard to the material terms that were to be included in the intended formal contract as well as the simultaneous mutual intention to be bound prior to the formal execution of that contract." *Marshall Contractors, Inc. v. Brown Univ.*, 692 A.2d 665, 669 (R.I.1997). Under Rhode Island law, an implied-in-fact contract differs from a "single clearly expressed written document" in the way that the parties express their mutual assent. *Id.*

Even if an implied-in-fact contract existed, there are two reasons why, as a matter of law, that is not sufficient to demonstrate a valid arbitration agreement. First, performance by itself does not evidence acceptance of the arbitration clause. *See Stanley–Bostitch, Inc.*, 697 A.2d at 326–27 ("[The other party] assented to these terms, defendant contends, when it took delivery of and paid for the re-term system. We do not agree."). The terms of the draft agreement that are material to defendant's performance might be binding on the parties. An arbitration clause, however, would not be a material term to whatever relationship the parties had. Performance indicates a willingness to do business with a party, but not necessarily a willingness to submit to arbitration. Second, an arbitration agreement must be clearly written and expressed. R.I. Gen. Laws § 10–3–2; *Stanley–Bostitch, Inc.*, 697 A.2d at 326. It must be an express contract, where mutual assent is manifested in a single written document, and not a contract implied-in-fact. *See* R.I. Gen. Laws § 10–3–2; *Marshall Contractors, Inc.*, 692 A.2d at 669.

Defendant cites case law that states that there is no requirement of signing in order to create a binding arbitration agreement. *See Todd Habermann Constr. Inc. v. Epstein*, 70 F.Supp.2d 1170, 1174–175 (D.Colo.1999); *Real Color Displays, Inc. v. Universal Applied Tech. Corp.*, 950

F.Supp. 714, 717–18 (E.D.N.C.1997); *Joseph Muller Corp. Zurich v. Commonwealth Petrochemicals, Inc.*, 334 F.Supp. 1013, 1019–021 (S.D.N.Y.1971). The Court notes that, in each of the cases cited, the lack of a signature was the sole reason put forth for invalidation of the agreement. Here, the evidence not only shows lack of signatures but also on-going negotiations that feature disputed terms relating to the arbitration agreement. Thus, the facts of this case are readily distinguishable from the cases that defendant cites. *See, e.g., Joseph Muller*, 334 F.Supp. at 1017 ("No question was raised or discussed about the arbitration agreement.").

■ The crux of defendant's argument is that because both parties expressed a desire to have contract disputes arbitrated, the Court should deny a stay of arbitration. The fact that both parties expressed a desire to have disputes resolved through arbitration is not sufficient. The parties must be mutually bound to the same arbitration agreement and their mutuality of obligation must be objectively manifested in a writing. *Stanley–Bostitch, Inc.*, 697 A.2d at 327 ("The defendant confuses a clear expression of intent to arbitrate on the part of [one party] with a clearly expressed agreement to arbitrate mutually assented to by both parties to the contract."). Otherwise, there is no consideration and any statements regarding arbitration are mere illusory promises. The papers cited by the parties represent negotiations, at least as to the arbitration agreement. *See Crellin Tech. Inc.*, 18 F.3d at 7–9. The arbitration clause was a disputed term: Plaintiff proposed arbitration in Rhode Island and defendant countered with Singapore. The parties had a relationship, but there was no objective clear written expression of a mutuality of obligation to abide by the same arbitration clause. *See* R.I. Gen. Laws § 10–3–2;

*Stanley–Bostitch, Inc.*, 697 A.2d at 326. Even if the second draft agreement evidences a promise by A.T. Cross to conduct arbitration proceedings in Rhode Island, there is no corresponding promise made by Royal Selangor. Indeed, defendant, by filing its arbitration proceeding in New York, did not comply with the very terms of the arbitration clause in the second draft agreement that it seeks to impose on plaintiff. There is nothing in the record that objectively manifests the intention that both parties were mutually bound by a clearly expressed and written arbitration clause. *See* R.I. Gen. Laws § 10–3–2; *Stanley–Bostitch, Inc.*, 697 A.2d at 326. Therefore, in the absence of a valid arbitration agreement, plaintiff cannot be required to submit to arbitration proceedings. *See AT & T Tech., Inc.*, 475 U.S. at 648, 106 S.Ct. 1415. Only the narrow issue of the arbitration clause is before this Court. The Court makes no finding as to the terms that may have governed any other aspect of the relationship between the parties.

As a matter of law, viewing the evidence in the light most favorable to the non-moving party, this Court holds that there is no valid arbitration agreement.

CONCLUSION

For the foregoing reasons, the Court grants plaintiff's motion to stay the arbitration proceedings initiated by the defendant. As no other issues remain, the clerk will enter final judgment in favor of plaintiff declaring that there was no valid and binding arbitration agreement between the parties.

It is so ordered.